LAMAR WATER & ELECTRIC LIGHT COMPANY v. CITY OF
LAMAR, *Appellant.*

In Banc, June 15, 1897.

1. **The rulings** on the constitutional questions determined upon the
former appeal in this case (128 Mo. 188) are adhered to by the major-
ity of the court *in banc* without re-opening the discussion of them.

2. **Ordinance:** CONTRACT FOR SUPPLY OF WATER. The decisions in
the *Neosho* cases (127 Mo. 627, and 136 Mo. 498) are followed on the
proposition that where an ordinance and contract for a water supply
(at a given sum per year as furnished) during a long term of years
are enacted and entered into between a city and a contractor, the

sum total of the payments that may become due, if the contract be performed during the entire term, is not to be taken as the amount of indebtedness incurred at the outset. The indebtedness (within the meaning of section 12, of article 10 of the Constitution) accrues year by year as the supply is furnished, and for future years is contingent on the continuance of the supply. (The court concedes that there is a conflict of decisions in other jurisdictions on this subject.)

3. Pleading: OMITTING ASSIGNMENT OF CONTRACT. An action was brought by one who had made a contract with a city for a supply of water, but the petition contained no allegation of the assignment to the contractor of the rights of the original parties (named in the concession from the city, in the form of an ordinance). It was held that the omission of any allegation of the intermediate assignments by which plaintiff secured the rights of the original parties named in the ordinance was not fatal to the action.

4. Ordinance Discussed: REQUIREMENT OF NOTICE. The ordinance in question in this case is discussed, and the court holds that written notice to the contractor of the impurity of the water was not required of the city, but such notice was required to stop the payment by the city for any public hydrant that got out of condition for use.

5. Objection: WAIVER. Where an article is furnished pursuant to a contract requiring it to be of a certain quality, the buyer must at least object to its quality within a reasonable time after its receipt, else the law will treat the receipt as a final acceptance and preclude any later objection on the ground of inferior quality.

6. Application to Water Supply Contract. The principle of the law of contracts above stated is applicable to the action of a city in regard to a supply of water furnished by a water company under a contract requiring the water to be "pure and wholesome."

7. Evidence: HARMLESS. When an erroneous ruling by the court in regard to the evidence is harmless (on the facts shown by both parties at the trial) such an error is not ground for a reversal of the judgment.

8. Reversal: IMMATERIAL ERROR. No judgment should be reversed for an error that does not materially affect the merits of the action. R. S. 1889, secs. 2303, 2100.

*Appeal from Barton Circuit Court.*—HON. D. P. STRATTON, Judge.

AFFIRMED.

*E. L. Moore, John B. Cole, H. C. Timmons* and *Burnett & Allen* for appellant.

The only method whereby a city of the fourth class can contract with any person, company, or association to furnish water for the use of the city and its inhabitants is "by ordinance." R. S. 1889, sec. 1589. (2) Where the plaintiff is an assignee, the petition must allege the fact of assignment. 1 Estee's Pleadings, p. 255; *Prindle v. Caruthers*, 25 N. Y. 426; *White v. Brown*, 14 How. 282; *Adams v. Holley*, 12 How. 330. (3) Plaintiff being an assignee of Snyder and Guinney, and relying upon their assignments, should have pleaded the same. Failing to do so, the court committed error in admitting, over defendant's objections, evidence on part of plaintiff concerning that assignment. (4) The court committed error in excluding the testimony of defendant's witnesses, Warden, McQueen, and Adams, by whom defendant sought to prove that at no time during the period covered by this suit did plaintiff's waterworks furnish any clear and wholesome water. If the waterworks failed to furnish clear and wholesome water for the use of the city and its inhabitants, the pay should stop until such water was furnished. (5) The court committed error in giving plaintiffs first instruction. It ignores that part of the contract which makes the consideration for the renting an agreement to furnish for the use of the city and the inhabitants thereof, a constant and uninterrupted supply of clear and wholesome water. It also submits to the jury the question as to whether the hydrants were supplied with sufficient water, after refusing to allow defendant to introduce any evidence on that point. (6) The court committed error in giving plaintiff's second instruction. It misconstrues section 18 of the ordi-

nance, when it tells the jury that defendant is required to notify plaintiff in writing when, from any cause, plaintiff shall fail to furnish water in the quantity and quality required by the contract. It is also erroneous in directing the jury to find that the water did comply with the terms of the contract, and was satisfactory to defendant, and defendant is bound to pay the contract price therefor, for all the time such notice in writing was not furnished to plaintiff. (7) The court committed error in refusing defendant's first instruction in the nature of a demurrer to the evidence, offered after all the evidence was in. (8) The court committed error in refusing defendant's second and third instructions. The receipts and expenditures of the city for the various years show that the expenditures in the years 1891 and 1892 exceeded the receipts. The forty cents water tax provided in bill number 99, if the whole thereof was collected without a cent of expense, would not raise sufficient revenue to pay the $3,000 annually falling due in 1891 and 1892. (9) The contractual ordinance is in violation of the Constitution of this State, and is therefore null and void. *First.* It provides for an extra water tax of forty cents on the $100 over and above the fifty cents authorized for ordinary city purposes, and is therefore in violation of the tax rate limit in section 11, article 10, of the Constitution. *Second.* It creates an indebtedness to an amount exceeding, in the years 1891 and 1892, the income and revenue provided for those years, without providing for the collection of an annual tax sufficient to pay the same as it falls due. Sec. 12, art. 10, of the Constitution. (10) The judgment rendered in this case is a general judgment, enforcible and collectible out of the ordinary revenues of the city.

*Thurman & Wray* for respondent.

(1)   Before the city was authorized to enter into this contract with respondent under the ordinance, appellant must have determined for itself that respondent was either an associate or an assign of A. H. Snyder and J. Guinney and it was not necessary to plead the evidence constituting respondent an assign and authorizing appellant to so contract with it.   The substantive facts are all that is necessary to be pleaded and that was done in this petition.   *Stewart v. Clinton*, 79 Mo. 608, and authorities cited.   A general objection to the introduction of testimony is no objection.   *Seligman v. Rogers*, 113 Mo. 654; *Gas Light Co. v. City of St. Louis*, 46 Mo. 121; *Patterson v. Camden*, 25 Mo. 13; *Jones v. DeLassus*, 84 Mo. 545; *Brewing Co. v. Sedalia Water Co.*, 34 Mo. App. 56; *Deutmann v. Kilpatrick*, 46 Mo. App. 627.   This contract authorizes the city to take charge of the waterworks plant and machinery at any time when respondent fails to furnish an "uninterrupted supply of clear and wholesome water" and to operate it until satisfied that respondent will efficiently operate the same.   According to the theory of appellant it may go along using the water for the purposes contemplated by the contract, not intending to pay for it, or not required to pay for it, and step in and take charge of the works without a word of warning to this respondent, without even an intimation that the water service was not in all respects as required by the terms of the contract.   No such unjust and unreasonable construction is dictated by the language of the contract. (2) Appellant after having used the water from the hydrants for the purposes contemplated by contract can not now be heard to say the water was not good and therefore it ought not to pay for it.   A party to a contract can not receive its benefits without complaint

and at the same time avoid its burdens.    *Water Co. v. City of Aurora*, 129 Mo. 584; *Gas Light Co. v. City of St. Louis*, 46 Mo. 121. (3) The city's ordinary current expenses together with the obligations for water and light exceed the "income and revenue" of the city. The only items of ordinary current expenses shown by this record is the salaries of officers of the city aggregating $1,694. The income and revenue of the city based upon a tax levy of ninety cents authorized in the city of Lamar for 1891 would yield the city $9,632 and for 1892, $10,351, with which to pay the official salaries, the expenses for light and water aggregating $6,196, leaving on any theory a balance of from $3,000 to $4,000 in the treasury to be used for any purpose that the city might see proper. *Lamar Water & Electric Light Co. v. City of Lamar*, 128 Mo. 188; *Aurora Water Co. v. City of Aurora*, 129 Mo. 540. (4) This contract does not charge any special fund with the payment of the debt to be created by it. *Bryson v. Johnson Co.*, 100 Mo. 76. (5) The statute of limitation will have run against the taxes of 1891 and probably 1892 before any process can be enforced against the city compelling it to collect the same as required by law and we have no doubt that this very object is intended to be accomplished by this appeal, the city recognizing that an appeal will delay final judgment against it.

BARCLAY, C. J.—This case was before the Supreme Court on a former appeal, reported 128 Mo. 188 (31 S. W. Rep. 756). Upon the trial following the return of the case to the circuit court, there was a judgment for plaintiff. The defendant, the city of Lamar, is now the appellant.

The pleadings were amended before the last trial. As some questions are raised in regard to them, it will be necessary to state their purport.

The action is to recover rental of hydrants for eighteen months from July 1, 1891, under the terms of an ordinance (No. 99), ratified by more than two thirds of the voters of the city, at an election held for that purpose in 1890. Pursuant to the ordinance the city entered into a contract, the chief terms of which will be given. The petition states the substance of the contract in so far as its terms bear upon the breaches alleged, and after specifying the particulars in which the contract has been broken, prays judgment for about $4,000 with eight per cent interest as agreed. Three specific breaches of contract are charged, each covering six months of time, between July 1, 1891, and January 1, 1893.

The answer (after a general denial) sets up several defenses relating to constitutional grounds of objection to the ordinance and contract. These will be mentioned again further on.

The answer also contained another defense the substance of which is that said ordinance provided that a constant and uninterrupted supply of clear and wholesome water should be furnished for the use of the city and its inhabitants; that there were months at a time between the first day of July, 1891, and the first day of January, 1893, when the waterworks did not furnish any water of any kind—all of which was at the time well known to plaintiff—and all the water which was furnished at any time was not clear or wholesome, but was muddy, filthy, foul, impure, unhealthy, and of no value whatever to the city or its inhabitants—all of which was all along known to plaintiff; that by the terms of said ordinance it was provided that the city should not pay or be liable for any hydrant rental or charge during any time that the waterworks should, by reason of being out of repair, or from any other

cause, fail to furnish water as required by the provisions of said ordinance.

The plaintiff's reply took issue on the new matter of the answer, above recited. The reply then declared that "defendant without notice to plaintiff that said water furnished was not satisfactory, at all times used and received the benefits of said water so furnished, and that it ought not now to be heard to complain of the character of water furnished by this plaintiff."

The cause was tried before Judge STRATTON and a jury.

The ordinance (99) was put in evidence by plaintiff. It authorized the city of Lamar to contract with Messrs. Snyder & Guinney "their associates or assigns," for a term of twenty years, touching the exclusive right to erect and operate waterworks "for supplying water from the North Fork of Spring River, at a point north or northeast of this city, or from any other source of supply of water, not polluted by offensive matter of any kind, for domestic, manufacturing, fire extinguishing, and the various other uses of water that may be needed in the said city."

Various sections of the ordinance describe the plant to be erected for supplying water and the mode of distributing it within the city. A steel stand pipe or tower one hundred and twenty-five feet high is provided for.

The third section stipulates for certain kinds of pumping machinery, with a capacity of not less than "one million gallons per day, and sufficient to supply all the clear, pure and wholesome water that may be required for the various uses in the said city during the continuance of this ordinance." . . . "The reservoir and filtering basin at the source of supply shall be the latest of modern filterations, and shall have a storage capacity at all times necessary to supply the demands,

and shall meet with the requirements of the city," to quote the ordinance literally.

The fifth section requires the location of sixty fire hydrants, at various points in the city, as designated by the board of aldermen, and that the hydrants be kept in repair and supplied with water by the contractors.

Section 7 contains an agreement by the city to pay for the use of the city hydrants (sixty in number) "for the supplying of water for the extinguishing of fires, flushing of gutters and sewers, and fire department uses, the sum of fifty dollars per annum for each and every hydrant so erected for the original sixty hydrants," etc.; and in consideration of the above the contractors bound themselves and their assigns "to furnish for the use of said city and the inhabitants thereof, a constant and uninterrupted supply of clear and wholesome water during the whole term of this contract and in quality sufficient at all times and seasons to supply the reasonable needs and requirements of said city and inhabitants, in conformity in all respects with the provisions of this ordinance."

The ninth section contains an agreement by the city to pay eight per cent per annum on money due under the contract and unpaid.

The seventeenth section provides for a fire test, which, when satisfactorily made, shall inaugurate the actual effectiveness of the contract as to rentals. And from that time the contractors or their assigns are to "continue and furnish without default a constant and uninterrupted supply of clear and wholesome water, as heretofore set forth. Failing so to do, the said city may take possession, temporarily, of said works, machinery and appurtenances, and operate the same until insured that the works will be efficiently operated by the said A. H. Snyder and J. Guinney, their asso-

ciates and assigns, and the expenses incurred by the city in so operating the works shall be a lien upon the earnings of the works until paid,'' etc.

''Section 18.   The city shall not pay nor be liable for any hydrant rental or charge during any time that the waterworks shall by reason of being out of repair or from any other cause, fail to furnish water, as required by the provisions of this ordinance and contract; nor for rental on any hydrant whilst out of condition for use, that may be so far out of repair as not to be in a condition for use for more than twenty-four hours after said Snyder & Guinney, their associates or assigns, shall have been notified in writing of its condition; and there shall be deducted from the next succeeding payment of hydrant rental thereafter such proportion of the total rent, or hydrant rental, as the case may be, as the time of such failure may bear to the annual hydrant rental contemplated by this ordinance and contract.''

The nineteenth section provides for a special annual tax not exceeding forty cents on the $100 valuation on all taxable property, if necessary, to pay the rentals; and the last (twentieth) section requires the submission of the ordinance to the people and its acceptance by a two thirds vote as required by the charter of cities of the fourth class to which Lamar belongs.

After the ordinance had been ratified by a majority of two thirds of the voters of the city at the special election for that purpose, a contract was closed between plaintiff and the city, on the basis of the ordinance. The original contractors had meantime assigned their interests so that, when the contract was made, the plaintiff company stood in their place, as an ''assign,'' and was so recognized in the final agreement which put the stipulations for rent, etc., into full operation.

The assignments of interest, on plaintiff's side, as shown by the proof, were from Mr. Snyder to Mr. Guinney; and by the latter to the Lamar Water Company, which consolidated with the Electric Light Company forming the plaintiff company.

Some objections are based on the admission of those assignments at the trial.

The most important ruling complained of was the exclusion of testimony offered by defendant to show that during a considerable period covered by plaintiff's claim for rentals the water furnished by plaintiff was not clear and wholesome.

But it further appeared from evidence of plaintiff and of defendant that, with the exception of a short period, from November 2, 1891 (when defendant notified plaintiff that the water was not satisfactory) to January 11, 1892, when a resolution rescinding the notice was passed, the defendant had continued to take and use the water without making any objection to its quality, until after this action was brought.

The instructions of the court at the close of the evidence it will not be necessary to recite at length. The jury found for plaintiff on the first breach of contract, for $250; on the second, for $1,890; and on the third, for $1,830.

The defendant then appealed in proper form.

1. Some constitutional objections to the ordinance and contract were submitted to the trial court, the same which were passed upon when the case was in the Supreme Court on a former occasion (128 Mo. 188). The defendant asks the court to re-examine the judgment announced at that time and to reverse it. But the majority of the court have determined to adhere to the rulings then made without reopening the discussion.

2. We regard the ordinance and contract as im-

posing a conditional obligation on the municipality in respect to the water supply and rental therefor; but we hold that no indebtedness of the city (within the meaning of section 12 of the tenth article of the Constitution) accrues under the contract until the supply of water has been furnished, as agreed, year by year. Hence we hold that the sum total of the payments that may possibly become due (if the contract be performed by the contractor during its entire term) is not to be taken as the amount of indebtedness incurred by the making of the contract at the outset. We are aware that there is conflict of judicial and other opinion on this point (43 Cent. L. Jour. 381). But the matter was plainly and clearly presented to the court *in banc*, and was positively decided as above indicated, in the *Neosho* case. That ruling was followed in the former judgment in the *Lamar* case (128 Mo. 188), and more recently in the second appeal in the *Neosho* case, 136 Mo. 498 (38 S. W. Rep. 89). We are content to abide by those decisions without reopening the merits of the discussion which they should be taken as closing.

3. It is insisted that the court erred in admitting the ordinance and contract in evidence because no allegation of the assignment of rights by the first contractors to the plaintiff is contained in the petition. The assignments occurred before the contract was made which accepted performance of the conditions and put the ordinance into force as to rentals. The final contract was made with the present plaintiff, and this action is based thereon. It was not necessary to allege any of the intermediate assignments. The city sanctioned them by finally closing the contract with the plaintiff company.

4. The most important new question of this appeal arises on the court's action excluding evidence that the water furnished under the contract was filthy

and not "wholesome". The learned trial court evidently adopted the view that has been earnestly urged here, namely, that the terms of section 18 of the ordinance require a written notice by way of objection to the quality of the water. But we think that view is not correct, and that such written notice is only necessary in case a hydrant is out of condition for use. It is not the sole available form of objection to the quality of the water supply.

But the evidence which accompanied defendant's effort to get before the jury the fact of the bad quality of the water (as well as very much independent testimony on both sides, admitted without objection) discloses that, with the exception of a period of about two months (for which due credit was obtained by defendant in the result) the defendant received the water as supplied by plaintiff and made no objection to its quality, until after this action was brought.

The plaintiff asserted a waiver of the quality in its reply, and all the testimony supports that plea.

It is one of the established principles of the law of sales, a principle founded on the plainest dictates of justice, that where an article is furnished, pursuant to a contract requiring it to be of a certain quality, the buyer must, at least, object to its quality within a reasonable time after its receipt, else the law will treat the receipt as a final acceptance, and preclude any later objection on the ground of inferior quality. Benjamin, Sales, sec. 703; *Graff v. Foster* (1878) 67 Mo. 520; *Water Co. v. Aurora* (1895) 129 Mo. 540 (31 S. W. Rep. 946).

We know of no reason why that rule of law should not be applicable to the water furnished by defendant to plaintiff. It would be plainly unjust for defendant to receive the water, as furnished under the contract

for a year or more, and then, when called upon for payment, first raise the question of its quality. If the water was received without objection within a reasonable time, the objection later, on the ground of bad quality, would be too late. Water is not an article capable of being conveniently returned, and the reason for requiring a prompt objection to such a commodity is even stronger than in case of the sale of many other articles.

The ordinance and contract in this case, viewed in their entirety, give strong support to the application of the principle above mentioned. They do not seem to imperatively demand a high quality of water as a condition to payment of rental, but rather seem to carry the thought that the water should be satisfactory to the defendant. The main source of supply is named, and summary remedies for default on plaintiff's part are provided. The terms of the agreement give little countenance to the theory that the quality of water might furnish a defense to payment, in the absence of any reasonable and timely objection thereto. On the admitted facts, as shown by all the witnesses who touched upon the subject, no such objection by defendant was made during any period of time in which the water was received and for which payment was accorded by the verdict. Hence it is wholly immaterial whether or not the water in fact furnished by plaintiff was clear and wholesome. The ruling of the learned court excluding that testimony was therefore harmless, and we should ignore it in obedience to the command of the law which declares that no judgment shall be reversed for any error, unless it materially affects the merits of the action. R. S. 1889, secs. 2303, 2100.

No other assignments of error appear to require comment.

The judgment is affirmed. GANTT, SHERWOOD, and ROBINSON, JJ., concur in the foregoing opinion. MACFARLANE, BURGESS, and BRACE, JJ., "concur in what is said in the opinion, but not in affirming the judgment," for the reasons that they still entertain the same view expressed by BLACK, J., in *Lamar W. & E. L. Co. v. City of Lamar*, 128 Mo. 190.