NU-WAY ICE CREAM MACH. CO., INC., v. PIG'N WHISTLE.

Western Section.  April 28, 1933.

Petition for Certiorari denied by Supreme Court, December 9, 1933.

582

Ewing, King & King, of Memphis, for appellant.
M. O. Herring, of Memphis, for appellee.

SENTER, J. This is a suit by complainant, Nu-Way Ice Cream Machine Company, to recover of defendant, Pig'N Whistle, the unpaid balance on an installment note executed by defendant in connection with a conditional sales contract in the purchase of certain ice cream freezing machinery sold and delivered to defendant by complainant on May 19, 1931. The contract price for the machine was $2,016.20, of which $465 was paid, or to be paid, as a cash payment and the balance payable in twenty-four monthly installments of $64.63 each. The first, or cash, payment, was not paid until several weeks after the machine was installed, and two of the monthly installments were paid, including the July and August installments.

The contract provided on its face that: "Above equipment to be placed on fifteen days trial, and should purchaser decide not to accept same, seller will be reimbursed $45 plus cost of electric connection, by purchaser."

The machinery was installed in defendant's plant about May 30, 1931, and the initial payment was made about thirty days later. The first two installment payments, which were due and payable on June 30 and July 30, were paid on August 7 and September 1, 1931, respectively. The contract further provides that in the event of a default in the payment of the respective installments as they become due and payable, the seller may, at its option, declare all the installments due and payable as of the date of the default.

The original bill alleged default in the payment of the installments, except the first two, and the bill was filed on November 18, 1931. The installment note contains a provision whereby reasonable attorney's fees would be paid in the event the note was placed in the hands of an attorney for collection, and complainant also seeks to recover attorney's fees as provided in the note in addition to the unpaid balance due and owing on said note.

The defendant filed an answer and a cross-bill. By the answer it admits the execution of the note and the purchase of the machinery, but denies that it is indebted to the complainant for any amount under said contract. The answer avers that the contract under which the ice cream machinery was purchased contained certain written stipulations and conditions and certain warranties and guaranties; that the guaranties, stipulations, and conditions contained in the

conditional sales contract had been breached by the complainant; that the machine has not operated as represented and guaranteed; that the temperature has not been maintained as guaranteed; that the freezing and hardening properties of the machine have not been as guaranteed; and that the representations and guaranties made wholly failed, and have failed to that extent that the defendant could no longer use the machine and had so advised the complainant, and that it had so advised the complainant from time to time in keeping with the terms of the contract of the failure of the machine to operate, and that complainant had done nothing to remedy the same or to bring the same within the warranties in the conditional sales contract and note.

The answer is also made a cross-bill, and is as follows:

"And now relying upon the facts set forth in the answer hereinbefore and assuming the role of cross-complainant, your cross-complainant would show to the Court that by virtue of the breach of warranty of the cross-defendant it is entitled to recover of the cross-defendant the sum of $465, the amount of cash payment upon the execution of, the contract for the purchase of this machine.

"Your cross-complainant prays that process issue requiring the cross-defendant to answer this bill, but its oath to its answer is expressly waived under the statute.

"That your cross-complainant have a decree against the cross-defendant in the sum of $465, and costs.

"That your cross-complainant have all such, other, further and general relief to which it may be entitled by virtue of the premises herein."

The clause of guaranty or warranty referred to by the defendant in its answer and cross-bill is as follows:

"The seller guarantees that the aforesaid refrigerating machinery and equipment will, upon completion of the installation thereof, be of ample capacity to produce the temperatures as herein specified, when machine is supplied with sufficient condensing water of reasonable temperature, and power of proper electrical characteristics, and operated in a manner approved by the seller; and the seller agrees to produce the aforesaid temperatures upon completion of the installation during a test and demonstration. Thereupon, the purchaser shall immediately make known to seller, in writing, any objection which he may have, and permit seller to make necessary corrections; failure to report objections within two days shall constitute a final acceptance."

The contract did not specify the temperatures to be produced, and in the absence of such a stipulation, reasonable temperatures such as are necessary and proper for the proper operation of the machinery to produce proper results and refrigeration would be the measure of the seller's undertaking in that respect.

Both in its answer and by its proof, it is the contention of the defendant that the machine has never met the requirements of this warranty; that it would not freeze the ice cream hard and keep it hard; that the frozen mixture was icy and flaky, or that the cream would, to use the expression of some of the witnesses, "go sandy," because it had to stay in the ice chamber too long in order to freeze it sufficiently.

The complainant, by its evidence, admits that when the machine was first installed certain adjustments and corrections had to be made in order to produce the proper temperatures and proper freezing of the cream. But it is the contention that after a few days these adjustments and corrections were made, and with the result that the machine did produce temperatures lower enough for the satisfactory freezing of ice cream; that tests were made and satisfactory temperatures were obtained.

We find a decided conflict in the evidence with reference to the quality of ice cream produced by this equipment. According to the evidence of the defendant and its witnesses, the machine never at any time produced a good quality of merchantable ice cream, and that with the best attention in the operation of the machine the cream, when frozen, was not of smooth texture, as required by the trade, but was streaked with ice, and otherwise of poor quality.

It is the contention of appellee, under its evidence, that after adjustments were made a few days after the installation, satisfactory results were procured; that the machinery was serviced by its agent and employee; that it had sold and had in operation in the city of Memphis several hundred of these machines which were being operated satisfactorily and without complaint; and that these other machines were serviced and inspected by its employee, employed for that purpose. It is further contended by appellee that whatever failure the defendant experienced in producing satisfactory ice cream, if any, was not due to any fault in the machine, but was due to negligent and careless operation, and inattention while the ice cream mix was being frozen, and because of the failure of the employees of defendant to carry out and follow instructions given in the operation of the machine.

As above stated, there is a decided conflict in the evidence on this question; but we are of the opinion that when all the facts are considered, this particular machine did not produce a first-class quality of ice cream. We are also of the opinion that this was due, in part at least, to the lack of skill of those intrusted with the operation of the machine.

The machine had been in operation for about thirty days before defendant made the cash payment of $465. The defendant paid the first two installments; the last installment paid was September 1, 1931, about three months after the machine had been installed

and in operation, and during all that time the defendant was using the machine and making all the ice cream that it sold to its customers during that period. The defendant never made any written complaint until November 5, 1931, more than five months after the machine had been installed. Some complaints had been made soon after the machinery was installed, and from time to time. On one occasion complainant's inspector, while visiting the place of business of defendant, who operated a sandwich, etc., shop, in Memphis, found that the thermostat had been broken. At another time it was found that the defendant had put a spoon in the freezing machine that damaged the blades of the machine to some extent. The defendant continued to use the machine in its business and made ice cream which it supplied to its customers all the time up to a short time before the suit was tried. According to the testimony of one of defendant's witnesses, an employee of defendant who operated the machinery the greater part of the time, they continued to use the machine until about three weeks before his deposition was taken, and his deposition was taken on February 23, 1932. On November 5, 1931, defendant wrote the complainant the following letter:

"In reply to your letter of November 4, 1931.

"We have called your attention to the fact that the ice cream machine at the Pig'n Whistle, 1579 Union Avenue, Memphis, has proved to be unsatisfactory.

"The machine has not done what was claimed for it. We have been unable to produce a satisfactory quality of ice cream with it. We have had a great deal of trouble in keeping the cabinet temperature regulated. The workmanship on the machine is crude, and its appearance is decidedly bad.

"We again request that you withdraw the machine from the Memphis location as we have discontinued using it.

"You may communicate with Mr. Terris Hagan, Mgr. Pig'n Whistle, in Memphis.

"We regret the fact that the machine has not proved satisfactory. We have given it the best of attention and have given you every opportunity to put it in proper condition, but this has not been done.

"Under the circumstance, there is nothing for us to do except let the machine go back to you and pay nothing further towards the purchase price of same."

The above letter was written by H. T. Hagan, president of the defendant corporation.

It is evident from the above letter that it was written in reply to a letter from complainant of date November 4, demanding payment of the delinquent installments. It will also be observed that the letter states that the defendant had discontinued using the machine. One witness saw the machine in operation in the month of December, 1931, at defendant's place of business, and another of defendant's

witnesses testified that it was in use by the defendant until about three weeks before the date he testified, so that it is clear that the defendant had not discontinued the use of the machine at the time the above letter was written, but continued to use it for at least two months after the bill was filed in this cause, and nearly three months after the date of the letter. While the letter states that, "we again request that you withdraw the machine," we do not find anything in the record to support that statement, or that any prior request had been made that the machine be withdrawn. So far as this record discloses, the above letter is the only written communication from defendant to complainant on the subject.

If the defendant desired to rescind the contract because of the breach of warranty, or misrepresentations, it should have done so within a reasonable time after it knew that the warranty or guaranty had been breached. The cross-bill does not seek a recovery for damages for the breach of the contract, nor does it plead recoupment, but the cross-bill in effect only seeks a rescission of the contract. And this is also true with reference to the evidence offered by the defendant. The defendant does not introduce any evidence to prove damages because of the breach of the contract, or the failure of the warranty, but seeks a rescission of the contract and to recover the amount paid on the contract. The defendant did not offer to return the machine at any time, nor does it make any tender of a return in the pleadings.

On August 6, 1931, the manager of defendant wrote the following letter to complainant:

"Enclosed find check for $64.63. Will you please send us notice each month about five days before payment is due?"

This was more than two months after the machine had been installed and in operation by the defendant, and this letter certainly does not express any dissatisfaction with the machinery, or any intention to ask for a rescission of the contract.

Appellant relies upon several propositions of law in support of the assignments of error, all of which are directed to the action of the chancellor in sustaining the original bill and decreeing a judgment in favor of complainant for the balance due on the machine and attorney's fees, and in dismissing the cross-bill. It is first contended that the seller is held to warrant that the goods he sells are not simply fit for the general purposes for which they are manufactured and sold, but that they are also fit for some special purposes of the buyer which will not be satisfied by a mere fitness for the general purposes of goods of the character sold, citing Williston on Sales, section 235. And on the further proposition that a stipulation that a machine is of a certain capacity and will perform certain work is a warranty to that effect. Reynolds v. General Electric Co. (C. C. A.), 141 Fed., 551; Yellow Jacket Mining Co. v. Tegarden, 104 Ark., 573, 149 S.

W., 518; 55 C. J., 777. The case of Ideal Heating Co. v. Kramer, 127 Iowa, 137, 102 N. W., 840, is cited by appellant. In that case it was held that a heating plant purchased for a particular building was impliedly warranted to heat that building; that it was not enough that a merchantable and workmanlike plant was furnished which might have heated some other building satisfactorily. Other cases cited in support are: The St. S. Angelo Toso (C. C. A.) 271 Fed., 245; Bagley v. Fire Extinguisher Co. (C. C. A.), 150 Fed., 284; American Spiral Pipe Works v. Oil Products Co., 220 Ill. App., 383; American Radiator Co. v. McKee, 140 Ky., 105, 130 S. W., 977; and other cases from other jurisdictions.

It is said by appellant that the chancellor in his opinion seems to have pretermitted the question of a breach of the warranty, and rested the decision upon the fact that the defendant had retained and used the machine. It is the contention of appellant in that respect that the retention and use of the machine by the defendant was in an effort to give the complainant all opportunity to remedy the defect and make good its warranty, and that the retention and use of the machine by the defendant under these circumstances is not a waiver.

As above pointed out, we think it is clear from this record that the defendant not only retained this machine but continued to use it for several months, even after it had written the letter of November 5. We do not think it can be consistently urged that the retention and continued use of the machine, at least after the letter was written, was for the purpose of giving the complainant further opportunity to remedy the machine or make good the warranty. It is probably true that the use of the machine for the first few weeks that it was in operation and its retention was for the purpose of giving the complainant opportunity to make the necessary adjustments, etc. However, according to this record, the machine was used regularly by defendant from the time it was installed, and on August 6, more than two months after it was installed and put into operation, the defendant mailed a check to meet an installment and then requested that it be given five days' notice of subsequent installment due dates. There was not a suggestion of dissatisfaction contained in this letter with reference to the operation of the machine, and certainly no request that it be taken out. This was during the busiest season for the retail sale of ice cream served at defendant's place of business, and afforded ample opportunity for defendant to know whether or not the machine could be made to operate satisfactorily. This was also true on September 1, when another installment was paid by the defendant, and the record does not show that any complaint was then made by the defendant. It was largely upon these facts that the chancellor determined the issues in favor of the complainant and against the defendant.

Appellant also cites and relies upon the rule as stated in Estrich on

Installment Sales, section 268, to the effect that the buyer is not precluded from maintaining an action in damages by keeping the property, or by executing notes for the purchase price after he is aware of the breach of warranty. This authority goes to the question of the right of the buyer to maintain an action for damages for the breach of a warranty, and does not go to the question of the right of the buyer to rescind the contract. As above pointed out, the defendant, by its pleadings, the cross-bill, only seeks a rescission of the contract, and does not allege or prove any damages for an alleged breach of the contract. Other authorities cited and relied upon by appellant present the question of the right of the buyer to maintain an action for damages for the breach of the contract of warranty while retaining the property, or where he has executed notes or made payment. One of the cases, Lamar Water & Electric Light Co. v. City of Lamar, 140 Mo. 145, 39 S. W. 768, holds that: ''Acceptance and retention of an article sold with a warranty do not prevent the buyer from recovering any damage he may sustain, on account of the article falling short of the warranty, at least if he make timely objection.'' And it is likewise held in Brown v. Weldon, 27 Mo. App., 251: ''And the damage may be recovered either by an abatement from the agreed price when the buyer is sued, or by an action if he had already paid in full.'' To the same effect is Fairbanks, Morse & Co. v. Baskett, 98 Mo. App., 53, 71 S. W., 1113, and cases cited therein. Numerous cases are also cited and relied upon by appellant to support the proposition that acceptance by the buyer and the retention and continued use of the same does not operate as a waiver of a breach of warranty where the retention and use of the article is under protest and objection that it does not fulfill the contract, and the retention and continued use is to give to the seller opportunity to correct the defect and to make good the warranty, especially where it is done at the request of the seller. McMyler v. Beckman Co., 17 Ohio Cir. Ct. R. (N. S.), 32; Austin Co. v. Tillman Co., 104 Or., 541, 209 Pac. 131, 30 A. L. R., 293. Appellant also cites and quotes at length from the case of Garr, Scott & Co. v. Stark, 36 S. W., 149, decided by the Tennessee Court of Chancery Appeals. This case is largely upon the question of the form of notice, and the time in which the same was to be given, and the conditions under which the machine was retained, and wherein the court said: ''Such retention and repeated trials will not enable the complainant to hold defendant for full price . . .'' When the facts of that case are compared to the facts of the present case, a very different question is presented.

There are numerous cases holding that a retention of the property and the continued use of the same operates as a waiver of a claim of breach of warranty or guaranty so as not to entitle the buyer to a rescission of the contract. Knoxville Traction Co. v. Manufacturing

Co. (Tenn. Ch. App.), 59 S. W., 173; Lewis v. Hubbard, 1 Lea, 436, 27 Am. Rep., 775. And the rule is stated in 24 R. C. L., 293: "If, after knowledge of breach of warranty . . . the buyer continues to use the goods received by him, he waives his right to rescind. It is no excuse for the continued use that it is required by the exigencies of the buyer's business, and it is also immaterial that the buyer, while continuing to use the property, made objections to it, and the fact that the further use of the goods after knowledge of defects in quality was for the purpose of establishing evidence of its defective quality, will not prevent such use from constituting a waiver of the rights to return."

Under the Uniform Sales Act, section 7262 of the Code, the remedies for breach of warranty are set out as follows:

"Where there is a breach of warranty by the seller, the buyer may, at his election: (a) Accept or keep the goods and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price; (b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty; (c) refuse to accept the goods, if the property therein has not passed and maintain an action against the seller for damages for the breach of warranty; (d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them to the seller and recover the price or any part thereof which has been paid."

It is this last-mentioned remedy that defendant invoked and relied upon in his answer and cross-bill, wherein it seeks to rescind and to recover back the amount of purchase price paid. We do not think that under the facts as disclosed by this record and as above set forth and as found by the chancellor, this remedy was open to the defendant. We are further of the opinion that whatever right he may have had to rescind the contract and recover the purchase price paid was waived by his conduct subsequent to his knowledge that the machine was not rendering satisfactory service. He not only retained this machine, with no offer to return it, and no tender of the machine, at least until November 5, but continued to use the same for some time after that letter was written, and also continued to use it for more than two months after the bill was filed in this cause. We are therefore of the opinion that there was no error in the action of the court in holding and decreeing a judgment in favor of complainant for the balance due on the note with interest, and in dismissing the cross-bill of appellant, and the assignments of error directed to this action of the chancellor are overruled.

The note sued on provided for the payment of reasonable attorney's fees in the event the note was placed in the hands of an attorney for collection. Complainant did not introduce any evidence to prove what would be a reasonable attorney's fee. The chancellor held that

ten per cent of the balance due on the note would be reasonable and proper, and decreed accordingly. The assignment of error by appellant on this action of the court presents the question that the chancellor was not authorized to decree any amount for attorney's fees in the absence of proof, since the note did not provide any specific amount, but merely provided for reasonable attorney's fees. We are of the opinion that this assignment of error should be sustained. If the note had provided a specific amount to be allowed and paid as attorney's fees, and the chancellor was of the opinion that that amount was reasonable, proof would have been unnecessary, since the contract showed that the item was the amount agreed upon between the parties in advance. But such is not the case that we now have. In the absence of any proof as to what would be a reasonable attorney's fee, and the failure upon the part of complainant to make any proof on that subject, we think that it stands as waived, and the chancellor was in error in fixing any amount unless there was an agreement by both parties that the chancellor could fix the amount without evidence, and no such agreement appears to have been made.

It results that the decree of the chancellor will be modified to the extent of the amount of attorney's fees allowed and decreed, and the decree will in all other respects be affirmed. Appellant and surety on the appeal bond will pay the cost of this appeal.

Heiskell and Anderson, JJ., concur.