In the Matter of ESTATE of L. H. MYERS, Deceased. Claims of GRADY GAMMON, BERTHA BULLING-TON and E. E. EASTERLY.—397 S.W.(2d) 831.

Eastern Section. July 27, 1965.

On Petition to Rehear August 13, 1965.

Certiorari Denied by Supreme Court December 6, 1965.

196

Milligan, Silvers & Coleman, Greeneville, for estate of L. H. Myers, appellant.

Maupin & Curtis, Greeneville, for appellee Grady Gammon.

Fred L. Myers, Newport, for appellee Bertha Bullington.

McAMIS, P. J. This case originated in the County Court of Greene County where Bertha Bullington, Grady Gammon and E. E. Easterly filed separate claims against the estate of L. H. Myers, deceased, aggregating in excess of $200,000.00. After consolidating for trial the three claims and a full hearing, the County Judge overruled all exceptions to each of the claims. The Administratrices have appealed and assigned errors.

The County Judge allowed the following claims of Bertha Bullington: (1) a note for $4,318.50 dated February 8, 1957, (2) a note dated September 5, 1961, for $11,110.00, (3) a note dated May 31, 1958, for $17,500.00 and (4) a claim in the amount of $3,250.00 for personal services claimed to have been rendered at a livestock auction company owned by the deceased at Rogersville.

The County Judge also overruled exceptions to the claim of Grady Gammon based upon a note in the sum of $10,000.00, dated April 4, 1962, and an uncashed check for $200.00.

The Easterly claim, also allowed, consists of 2 notes, one for $65,000.00, dated December 31, 1960, and the other for $48,500.00, dated December 30, 1961.

L. H. Myers died intestate, January 6, 1963, survived by two daughters, Mrs. Carpenter and Mrs. Clemmer, who qualified and have acted as Administratrices of the estate.

Mr. Myers was a substantial farmer and property owner. He owned, in partnership with Robert Britton, livestock auction yards at Greeneville and Morristown, and also owned and operated individually another livestock auction at Rogersville. In addition, he dealt extensively on the commodity and stock markets. Claimant Bertha Bullington, for many years, acted as his secretary and handled the bookkeeping and check writing at all three of the stockyards. Claimant Grady Gammon was also employed at the stockyards and engaged in dealing in livestock. Claimant E. E. Easterly was a friend of Mr. Myers and frequently loaned him money.

Counsel for the Estate insist that all of these claims are to be considered against the background of the habit of the deceased to sign and leave lying around his office notes for large amounts with the name of the payee left blank and that three such notes were delivered to them by Miss Bullington when they called upon her for deceased's records following his death. In support of this insistence a handwriting expert testified that the notes of all three claimants appear to have been executed about the same time. As we understand, it is not now contended that the signatures appearing on the check and notes here in question are not the genuine signatures of the deceased.

## The Bullington Claim

Miss Bullington testified that the note for $4,318.50 was for borrowed money advanced to the deceased. She filed as an exhibit to her testimony a check, in the amount of the note dated the same date, to L. H. Myers, bearing his endorsement. There seems no serious doubt that the note represents a loan and there is no proof of payment. It is insisted, however, that the Court erred in not holding the note barred by the statute of limitations of six years.

The dates material to this question are these: The note is dated February 9, 1957, and is payable one day after date. Mr. Myers died January 6, 1963. The personal representatives qualified January 14, 1963. The claim was filed April 29, 1963. If the death of the maker tolled the statute it was filed in time.

T.C.A. sec. 28-111 provides:

"Suspension pending administration of estate.—The time between the death of a person and the grant of letters testamentary or of administration on his estate, not exceeding six (6) months, and the six (6) months within which a personal representative is exempt from suit, is not to be taken as a part of the time limited for commencing actions which lie against the personal representative."

We think the statute saves the note for the bar of the statute.

"The statute of limitations of six (6) years does not run against the creditors of a decedent, either during the six (6) months immediately after the administration is granted, or during the period, not exceeding six (6)

months, actually elapsing between the decedent's death and the granting of administration on his estate." Bright v. Moore, 87 Tenn. 186, 10 S.W. 356.

Miss Bullington testified that the note for $11,110.00 represented a combination of smaller notes previously executed by Mr. Myers for borrowed money.

As to the note for $17,500.00, Miss Bullington testified that in the spring of 1951 she bought a herd of cattle from Ralph Ingle for $17,800.00, and after two or three of the cattle died she re-sold them to Mr. Myers for $17,500.00, the amount of the note,—that the note represents the purchase price of the cattle sold to Mr. Myers. Ralph Ingle testified that Miss Bullington paid him $17,800.00 for the cattle and filed as an exhibit a paid check by Miss Bullington in that amount. He further testified that Mr. Myers later told him that he got the cattle from Miss Bullington.

The claim for services rendered at the Rogersville stockyards represents $25.00 per day for the number of weeks Miss Bullington went to Rogersville to attend to the bookkeeping and write checks at the weekly auction sales there. This was the same amount received by other girls for the same services. Mr. Britton testified he heard deceased say Miss Bullington was to be paid for this service.

It is true Miss Bullington did not mention to the Administratrices when they called on her for the deceased's records that she had any claim against the estate. However, it appears relations between the parties had become somewhat hostile and claimant's failure to mention her claim at that time may have been due to her desire to avoid unpleasantness.

It is also shown that in listing her assets in a financial statement to the Greene County Bank, Miss Bullington failed to list her claims against Mr. Myers. We do not know the circumstances or reasons for this statement. It lists real and personal property valued at $23,300.00 and a net worth of that amount. This may have been thought sufficient for the line of credit desired.

The argument earnestly pressed upon us that the notes were all executed, in the opinion of an expert on handwriting, at about the same time and, therefore, were in some way related to unsigned blank notes found after Mr. Myers' death and to some sort of conspiracy among the claimants is legitimate argument. We find, however, that it is based on conjecture rather than upon any facts appearing in the record. The three blank notes are all dated in 1953 and there is no proof that Mr. Myers ever repeated this careless practice thereafter.

T.C.A. sec. 47-124 provides:

"Every negotiable instrument is deemed prima facie issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value."

The record shows Miss Bullington to be a person of good reputation and character. The County Judge after observing her on the witness stand chose to accredit her testimony and we can not say the proof offered by the Estate overcomes the presumption afforded under the statute, supported as it is by the testimony of Miss Bullington and the corroborative proof above outlined. The assignments complaining of the Court's action in overruling the exceptions to this claim must be overruled.

## The Claim of Grady Gammon

There seems to be no serious question about the check for $200.00. As to the note for $10,000.00 dated April 4, 1962, Gammon testified that in the years 1957, 1958, 1959 and 1960 he loaned money to Mr. Myers as a result of which he held notes and checks totaling $10,000.00 and that the note here in question represented a combination of these notes without accrued interest; that the deceased told him to figure up the accrued interest and he would pay it.

The record shows that claimant Gammon earned a substantial salary, engaged in trading and habitually carried large sums of money in his pocket book. He never kept a bank account and paid cash for everything he bought, including automobiles. His good character and reputation are sustained by the record. We do not think the record supports the insistence that he could not have made loans aggregating $10,200.00.

It is insisted, however, the court erred in allowing this claimant by amendment to sign the sworn proof of claim after the expiration of the 9 months allowed by T.C.A. sec. 30-510 for filing claims against decedent estates.

The County Court Clerk of Greene County testified that Gammon brought the check and note to his office; that he filled out the claim, attaching copies of the two instruments to the proof of claim; that he then swore the claimant to the claim but through inadvertence failed to have him sign it. When these facts were made to appear the County Judge after the lapse of the nine months period allowed the amendment.

The statute is designed to afford a simple and somewhat informal method of filing claims. It dispenses,

with formal pleadings and is to be liberally construed and applied. Wilson v. Hafley, 189 Tenn. 598, 226 S.W. (2d) 308; Cooper's Estate v. Keathley, 27 Tenn.App. 7, 177 S.W.(2d) 356.

No harm resulted, so far as we can see, from this inadvertence. The Administratrices received a copy of the defective claim and filed their exceptions within time. We can not say the County Judge abused his discretion in allowing the Gammon claim.

### Claim of E. E. Easterly

As above shown, this claim is based upon a note dated December 31, 1960, for $65,000.00 and a note dated December 30, 1961, for $48,500.00. Alma Hughes Jackson, an employee of Easterly, testified she prepared the $65,-000.00 note and saw Mr. Myers sign and deliver it to Easterly. Miss Bullington testified she prepared and saw Mr. Myers execute the note for $48,500.00. It is not insisted Mr. Easterly was not financially able to make advancements in these amounts and, as we have said, the proof is that he frequently dealt with the deceased and loaned money to him.

The defense to these notes is payment. In support of this defense the Administratrices showed by records of Greeneville banks that the following checks of Unaka Corporation, bearing the endorsement of L. H. Myers, cleared the banks and went to the credit of E. E. Easterly:

| December 28, 1961, | $42,000.00 |
| September 7, 1962, | $84,000.00 |
| September 7, 1962, | $2,951.67 |

In his original testimony Mr. Easterly testified the two notes were justly due and owing, filed the two notes as

exhibits and rested. After the introduction of the bank records showing the above checks had been credited to his account, he testified that these checks grew out of his purchase from the deceased of notes the deceased held against Unaka Corporation. This rebuttal evidence was admitted over the objection of the Administratrices that it involved a transaction with the deceased and is, therefore, incompetent under the "Dead Man's Statute", T.C.A. sec. 24-105. The admission of this evidence is assigned as error.

We find it unnecessary to decide whether this evidence was improperly admitted. The proof is sufficient to sustain the claim without this evidence. There is no evidence relating to transfer of the Unaka Company checks to claimant to the indebtedness at that time owing by the deceased to the claimant. It must be borne in mind also that these are not checks of the deceased payable to claimant, and that the amounts do not correspond to the amount of the notes held by claimant. The deceased, an extremely capable and experienced business man and trader, allowed the notes to remain uncancelled and in the hands of claimant, a circumstance entirely inconsistent with payment. In addition, as above indicated, this claimant made other advancements to the deceased from time to time in the form of loans.

■■ The burden of proof was upon the Administratrices to establish the defense of payment. In view of all the circumstances, particularly the retention by claimant of the two notes, we think they failed to carry this burden.

Trying the case de novo, we have reached the conclusion that all of the claims here under consideration were properly allowed without the aid of the presumption of

correctness of the finding and conclusions of the County Judge. It is, therefore, unnecessary to pass upon the assignment directed to the failure of the court to make a finding of facts as requested.

This leaves for consideration only the question of the allowance of interest and attorney's fees.

The Gammon note does not provide for interest and the Court allowed interest only from its maturity date. The Easterly notes are payable on demand but provide on their face for 5% interest. The Bullington note for $4318.50 is payable one day after date. Interest was allowed from maturity. The Bullington note for $11,110.00 is payable — days after date and does not provide for interest. It is insisted it is to be treated as a demand note. Interest was allowed from its execution date. The Bullington note for $17,500.00 is payable one day after date. Interest was allowed from maturity.

It is insisted no interest was allowable on the demand notes until the claims were filed, in the absence of proof of prior demand.

"An instrument is payable on demand:

(1) Where it is expressed to be payable on demand, or at sight, or on presentation; or

(2) In which no time for payment is expressed." T.C.A. sec. 47-107.

▉▉ Under this statute the Bullington note for $11,-110.00, payable — days after date, is to be treated as a demand note. Miss Bullington's testimony that she made demand for payment of this note was excluded as a transaction with decedent. Since it does not provide for interest and there is no proof of demand, it came due

when the claim was filed, T.C.A. sec. 47-1609, and the holder was entitled to interest from that date in the Courts discretion. The assignment directed to the allowance of interest on this note is sustained to this extent. Interest will be computed from the date the claim was filed.

 Interest was allowable from maturity on all the notes payable on a day certain at the discretion of the Court. Tennessee Fertilizer Co. v. International Agr. Corp., 146 Tenn. 451, 243 S.W. 81. Since the demand notes expressly provide for interest at 5%, interest was properly allowed from the date of their execution. The statute, T.C.A. sec. 47-1609 providing that interest on demand notes shall be computed from the day of the demand applies only where the note does not provide for interest on its face. The question is controlled by T.C.A. sec. 47-117, which provides in part as follows:

"(2) Where the instrument provides for the payment of interest, without specifying the date from which interest is to run, the interest runs from the date of the instrument, and if the instrument is undated, from the issue thereof."

The remaining question is the propriety of allowing attorney's fees without proof as to the value of services rendered. The Bullington note for $4318.50 provides for "reasonable" attorney's fees if the note "is placed in the hands of an attorney-at-law for collection, or has to be sued on". The other notes contain similar or identical language except that the amount to be paid is fixed at 10%.

There can be no doubt that the filing of exceptions made necessary the placing of all of the notes in the hands of attorneys for collection.

 Since the note for $4318.50 held by Miss Bullington provided only for reasonable attorney's fees and no proof was offered as to what amount would be reasonable, under the authority of Nu-Way Ice Mach. Co. v. Pig'N Whistle, 16 Tenn.App. 581, 65 S.W.(2d) 575, nothing can be allowed as an attorney's fee on this note.

In the concluding portion of the opinion in that case it was said:

"If the note had provided a specific amount to be allowed and paid as attorney's fees, and the chancellor was of the opinion that that amount was reasonable, proof would have been unnecessary, since the contract showed that the item was the amount agreed upon between the parties in advance. But such is not the case that we now have. In the absence of any proof as to what would be a reasonable attorney's fee, and the failure upon the part of complainant to make any proof on that subject, we think that it stands as waived, and the chancellor was in error in fixing any amount unless there was an agreement by both parties that the chancellor could fix the amount without evidence, and no such agreement appears to have been made." See also Burge Ice Machine Co. v. Strother, 197 Tenn. 391, 404, 273 S.W.(2d) 479.

 Under the same authority the holders of the other notes were properly allowed the stipulated 10%. See also Young v. Jones, 36 Tenn.App. 333, 255 S.W.(2d) 703.

Except as herein modified as to the allowance of interest on the $11,110.00 note held by Miss Bullington and the elimination of attorney's fee on the note she holds in the amount of $4318.50, the judgment is in all respects affirmed and the cause remanded. Costs are adjudged to the Administratrices and sureties on the appeal bond.

Cooper and Parrott, JJ., concur.

On Petition to Rehear

McAMIS, P. J. Counsel for the Administratrices have filed an earnest petition to rehear seeking a reversal of our previous holding that the Bullington note for $4,318.50 is not barred by the statute of limitations of six years, and that the Administratrices failed to carry the burden of showing payment of the Easterly claim.

In our original opinion we cited Bright v. Moore, 87 Tenn. 186, 10 S.W. 356, holding that under T.C.A. sec. 28-111 limitation statutes do not run during the six months period during which personal representatives are immune from suit. Petitioner argues that as T.C.A. sec. 30-1001 now contains the language "other than by filing of claims" no suit shall be brought until this period of immunity has run and since T.C.A. sec. 30-512 provides that the filing of claim arrests the running of limitations statutes, there is no reason to tack six months to the applicable limitation period.

The argument is ingenious and has been ably presented. We are of opinion, however, it should be addressed to the Legislature, rather than to the courts. T.C.A. sec. 28-111, in express and unequivocal terms, provides that the period of six months that personal representatives are immune from suit "is not to be taken as a part of the time limited for commencing actions which lie against the personal representative." The Legislature was here dealing specifically with the time within which suit may be brought. This statutory provision goes back to the Code of 1858.

In 1939, by what is now T.C.A. sec. 30-512, legislation was enacted providing that the filing of a claim

against a decedent estate stops the running of the applicable statute of limitations. The Legislature could have, but did not, at that time repeal T.C.A. sec. 28-111. Both T.C.A. sec. 30-512 and T.C.A. sec. 28-111 are for the benefit of creditors and clearly, there is no conflict or repeal by implication which would warrant the Courts in disregarding the provisions of T.C.A. sec. 28-111, as we are asked to do.

As to the Easterly claim, we have concluded upon further consideration that it is completely out of harmony with the footing upon which experienced business men conduct their affairs to suppose that Mr. Myers would have endorsed notes to Mr. Easterly in payment of the notes he held without requiring surrender of the notes. The case might be different if he had issued his own check in payment for in that case he would have had his cancelled checks as evidence of payment. The quotations from 11 A.L.R.(2d) Bills and Notes, Section 971, contained in the brief is not to the contrary. The text statement is merely to the effect that failure to require surrender of the instrument does not deprive the maker of the right to show payment. The evidentiary force of failure to do so is not covered in the citation.

For the reason indicated, the petition to rehear must be denied.

Cooper and Parrott, JJ., concur.