NATL. UNION FIRE INS. CO. v. BAKER et al.

Western Section.    May 15, 1936.

Petition for Certiorari denied by Supreme Court, February 13, 1937.

Thos. G. Watkins, of Nashville, and M. E. Lee, W. K. Abernathy, and J. A. Shelton, all of Selmer, for appellant.

Wood & Weeks, of Selmer, for appellees.

KETCHUM, J. The bill in this case was filed by the National Union Fire Insurance Company against a former agent, Pat Baker, and P. L. Basinger and W. L. Weatherly, the sureties on his agency bond, on a sworn account in the sum of $460.33 coming from the State of Pennsylvania, for alleged unearned commissions on premiums refunded to policyholders upon the cancellation of their policies. The itemized account and the agency bond are filed as exhibits to the bill; and the prayer of the bill is for a decree against the said Baker and his sureties for the amount of said account with interest and reasonable attorneys' fees.

There was a demurrer to the bill which was overruled, and the defendants filed their joint answer in which they denied that the dedefendant Baker was indebted to complaint in the sum of $460.33, or in any other amount; and by amendment to his answer the defendant Pat Baker files as exhibits to his answer the "Solicitor's Agreement" with complainant, and also the written "Memorandum of Commission Agreement," which papers had been mislaid and were

not available when the original answer was filed. The answer then quotes the following provision from paragraph 9 of the said "Solicitor's Agreement": "I will return to the company all unearned commissions on return premiums on policies cancelled pro rata or otherwise, and I will pay back to the company all advances made to me for commissions on fees and notes not paid within sixty days after maturity," and avers that the complainant seeks to recover against him under this provision of the agreement. The answer then avers that on or about March 22, 1932, the complainant determined to quit writing farm policies in Tennessee, and canceled the outstanding policies written by it; and that by its bill the complainant is seeking to collect from him and his sureties the commissions on the unearned premiums on a large number of policies secured by him which it had canceled when it determined to withdraw from the farm business in this state. He then denies that complainant had the right to cancel these policies and surrender the premium notes which he had taken and sent in to the home office. He avers that all of said policies were written for five-year terms with premiums payable on terms of one-fifth cash, which was retained by him as his commission, and the balance evidenced by notes executed by the insured payable in four annual installments, and avers that the makers of said notes were all good and solvent.

The answer then quotes the following provision from said "Solicitor's Agreement": "I will pay back to the Company all advances made to me for commissions and fees on notes that are not paid within sixty days after maturity," and avers that none of said notes were sixty days overdue, but that complainant had canceled all of said policies, and surrendered said premium notes before they became due. And he avers that if complainant had continued in business in Tennessee all of said notes would have been paid, and he denies that complainant is entitled to recover from him the commission collected and retained by him on the premiums refunded or premium notes returned to the policyholders when their policies were canceled.

The chancellor found as a fact that the commission agreement and the solicitor's agreement constituted the contract between the parties, and that the contract "contemplated the transaction of business and the continuation of business on the terms set forth in the Exhibit, and that it did not contemplate or provide for the entire discontinuance of business in the state"; and that the "complainant was not authorized to discontinue business in the state, and to arbitrarily cancel the policies which had been procured for the complainant by the defendant, and which were still in force, and which were solvent and not in default"; and that complainant was not entitled, under the contract, to recover the unearned commissions on returned premiums on policies which were arbitrarily canceled in

order that complainant might cease to do business in Tennessee; and he, accordingly, dismissed the complainant's bill.

The complainant has appealed to this court and has filed fourteen assignments of error. Five of said assignments of error complain of the action of the court in construing the contract as he did, and seven complain of his failure to construe it in accordance with the contention of the complainant; one complains of his failure to allow the complainant its reasonable attorneys' fees for services rendered in prosecuting this suit; and the last one complains of his having taxed complainant with the costs. The third assignment fairly states the contention here, with reference to said account as follows: That the chancellor erred in holding that ". . . the true construction of this contract gives to complainant (appellant) no right to arbitrarily cancel policies as was done in this case and charge to the defendant the unearned premiums or commissions as though these cancellations had occurred in the ordinary course of business."

There is no dispute as to the facts. The defendant admits in his deposition that the items and amount of the commissions on the premiums refunded as claimed by complainant are correct, but, of course, he denies liability to complainant for such amount. He admits that the complainant discontinued its farm insurance business in McNairy county on March 22, 1932, and it was his information that it had discontinued that kind of insurance all over the country. He admits that complainant reserved the right in all of its policies to cancel the same upon five days' notice, upon the return of the premium for the unexpired term, upon a pro rata basis. The complainant's special agent told defendant that complainant was going to cancel all its farm policies as of March 22, 1932, when it quit the farm business. All the policies canceled by the complainant were in full force at the time they were canceled, and none of the premium notes were as much as sixty days over due at the time they were canceled, and all the policies were canceled by complainant of its own motion on a pro rata basis, because it was quitting the farm insurance business.

In the ninth paragraph of the "Solicitor's Agreement" Baker agreed with the complainant that he would "return to the company all unearned commissions on return premiums on policies cancelled pro rata, or otherwise . . .," and the sole question for determination here is whether the complainant is entitled to charge back to him as unearned the commissions on the premiums refunded to the policyholders when the complainant quit the farm business and canceled all its outstanding policies procured by the defendant.

Since Baker concedes that the complainant had the right to cancel all its policies of its own motion on a pro rata basis at any time, and since he agreed in his contract to refund all unearned commissions on premiums refunded upon such cancellations being made,

we think he is liable to the complainant for the commissions on the amount of the premiums refunded. We find nothing in the record to warrant the chancellor's finding that the complainant did not have the right to discontinue its farm business, or that its action in doing so was arbitrary. Baker contracted with it with the full knowledge that it had the right to cancel any or all of its policies at any time of its own motion upon refunding the premiums on a pro rata basis, and that it might do so, and we think he must be held bound by his contract.

The exact question was before the court in the case of Independence Indemnity Co. v. Dreyfus (C. C. A. 6) 49 F. (2d) 599, 600. In that case the Indemnity Company withdrew from the Youngstown, Ohio, territory, and canceled all the policies it had outstanding, and sued Dreyfus, its agent, for the commissions on the premiums refunded for the unexpired terms of its policies. The agency contract provided that the agent would "return to the company the full commission on that part of any premium returned to the insured." The district court held that this provision of the contract "was apparently intended to refer to the premiums returned . . . in the regular and due course of the transaction of the business," and that it did not apply "where all policies in force . . . were canceled because of unsatisfactory conditions affecting the risks in general."

The Circuit Court of Appeals reversed this judgment, and in the course of its opinion said:

"We are unable to see any distinction in law between the cancellation of all policies within a given territory because of unsatisfactory conditions affecting all risks in such territory, and the cancellation of but certain policies because of conditions affecting the risk only as regards such policies. In either event the agent's compensation is limited to commissions upon the several portions of the premiums earned before cancellation, and the agent is under expressly defined obligation to return to the company the commissions computed upon the unearned portions of the premiums which had theretofore been retained."

The reasoning of this case seems to us to be sound, and we adopt it as conclusive of the instant case.

To the same effect, see 3 Couch, Cyclopedia of Insurance, section 560 C, at page 1795.

One of the conditions of the agency bond is that Baker "shall also pay over the return commissions upon any and all policies of the said company which, for any cause, may be cancelled at any time. . . ."

We sustain the appellant's assignments of error challenging the correctness of the chancellor's decree in this respect, and order a decree here in favor of appellant and against the appellees, Pat Baker and his sureties P. L. Basinger and W. L. Weatherly, in the sum of $460.33, with interest from June 25, 1934, the date of the

filing of the bill. There is no evidence to show what would be a reasonable attorneys' fee for the services rendered by complainant's solicitors in this proceeding, so the assignment of error based upon the refusal of the chancellor to allow the complainant such attorneys' fees will be overruled. Nu-Way Ice Cream Machinery Co. v. Pig'N Whistle, 16 Tenn. App. 581, 589, 590, 65 S. W. (2d) 575. The appellees will be taxed with all the costs.

Senter and Anderson, JJ., concur.