# HARRIMAN WELDING SUPPLY CO. v. LAKE CITY LIGHTWEIGHT AGGREGATE CORP. —330 S. W. (2d) 564.

Eastern Section. July 15, 1959.

Certiorari Denied December 11, 1957.

530

Forrest Andrews and R. Arnold Kramer, Knoxville, for W. E. Fischer, Receiver of Tennessee Lightweight Aggregate Corporation, and Aldo Franconi.

H. T. Kern, Knoxville and W. B. Lewallen, Clinton, for H. C. Scruggs, Receiver of Lake City Lightweight Aggregate Corporation.

McAMIS, P. J.   This case originated as a general creditors' bill filed by Harriman Welding Supply Co. against Lake City Lightweight Aggregate Corporation. The bill was sustained and thereafter *Tennessee* Lightweight Aggregate Corporation filed an intervening petition seeking a recovery of $117,826.62 alleged to be owing by Lake City Lightweight Aggregate Corporation as

royalties under an assigned lease. From a denial of its claim Tennessee Lightweight Aggregate Corporation has appealed. For convenience and brevity reference to the Receivers will be omitted. The petitioner will be referred to as "Tennessee" and defendant as "Lake City".

Lake City answered the petition setting up the defense that Tennessee fraudulently and falsely represented at the time Lake City accepted an assignment of the lease that the product to be made from the shale covered by the lease would bring $6 per ton on the market; that Tennessee promised to forgive the royalties if the $1 per ton royalty required under the assignment proved too high and that the officers and directors of Tennessee who were largely the same persons who were in control of the affairs of Lake City fraudulently and falsely represented that the assignment would be to the advantage of Lake City but that, on the contrary, Lake City was never able to sell its products for $6 per ton and the materials mined under the lease contained so much coal that it burned the kilns in which it was used, forcing Lake City to procure 25% of its material from other sources, all to its great loss and damage. On these issues there was a reference to a Special Master.

The Special Master disallowed the claim and in disposing of exceptions filed by Tennessee, the Chancellor, in concurring with the Master, said:

"It appears that the Coal Creek Mining and Manufacturing Company is the owner of the land whereon the defendant corporation leased large dumps of slate to one H. P. David who in turn assigned his lease to Tennessee Lightweight Aggregate Corporation, the defendant (petitioner) corporation herein; that there was a

provision in the original lease to David to Tennessee Lightweight Aggregate Corporation that a royalty of 7½c per ton would be paid to the original lessor, Coal Creek Mining and Manufacturing Company; that there was placed in the lease existing between Tennessee Aggregate Corporation and Lake City Lightweight Aggregate Corporation a provision that Lake City Lightweight Aggregate Corporation would pay to Tennessee Lightweight Aggregate Corporation the difference between the royalty due and payable to the land owners and $1.00 per cubic yard of materials based upon a selling price of $6.00 per cubic yard.

"The proof discloses that the petitioner, Tennessee Lightweight Aggregate, was originally owned by David, Greenup and Dulworth; that there was no money invested in this corporation; that David sold his interest and that thereafter the defendant corporation was organized and Dulworth was the president of both corporations; that most of the directors of the defendant corporation were also stockholders and directors of the Tennessee Lightweight Aggregate Corporation.

"The president of the defendant corporation executed the lease to the Tennessee Lightweight Corporation, while president also of that corporation and without any authority from the Board of Directors of the defendant Corporation.

"As pointed out by the Special Master, there was some proof that the royalty was excused as being oppressive.

"The records and books of the defendant corporation did not reflect any indebtedness to the petitioner. Financial statements made from time to time to secure credit reflected no indebtedness.

"There were no books or records of any kind of the petitioner produced in proof to substantiate petitioner's claim for this large sum of money. The Court could agree with counsel for the petitioner that a claim should not be denied because an insolvent debtor did not carry on its books an account due a creditor if the circumstances were such as ordinarily prevails between debtors and creditors. Here, we have almost the same officers and directors handling the affairs of both corporations, making statements for the defendant corporation that reflected no indebtedness to the other corporation. We have no books or records of the petitioning corporation to reflect any indebtedness. Surely, the officers and directors connected with the petitioner who were likewise officers of the defendant knew that financial statements were being made from time to time by the defendant corporation which reflected no liability for royalties payable to the petitioner herein.

"From all of the proof the Court must agree with the Special Master and concur in the reasons set out in his report for the disallowance of this claim."

Counsel for Tennessee attack the reasoning of the Master and of the Chancellor and seek to excuse the delay of several years in asserting a claim under the assignment of the lease on the ground that Tennessee executed a "stand-by" agreement under which it agreed not to press its claim for royalties for a period of five years in order to enable Lake City to secure a loan from the Reconstruction Finance Corporation. It is said in behalf of Tennessee that the only evidence supporting the concurrent finding of the Master and Chancellor is the testimony of H. P. David. David testified that he had advised

the officers and directors of Tennessee prior to the assignment that building blocks made out of the shale covered by the lease could not be manufactured and sold as contemplated without the use of cement as an ingredient; that for this reason the materials could not be sold on the market for $6 per ton or anything like that amount; that, in effect, the organization of Lake City and the assignment of the lease to it on the royalty basis of $1 per ton was merely a scheme to enable Dulworth and Greenup to sell stock in Tennessee to the public at an exorbitant price and that he refused to be a party to the assignment and sold his stock to Dulworth and Greenup for $40,000.

██ It is insisted that David's testimony that he accepted $40,000 for his stock in Tennessee puts him in the position of having enabled Dulworth and Greenup to promote their scheme to sell their stock in Tennessee to the public. We cannot agree, however, that this circumstance destroys the probative force of his testimony. In addition, there is the failure of Lake City to show the claim on its books as a liability and the failure of Tennessee to show that it carried the claim on its own books as an asset. The Master and Chancellor were not required to consider each of these circumstances in isolation and independent of David's testimony. All of the proof must be considered as a whole and when so considered we think there is no escape from the conclusion that there is credible material evidence supporting these findings.

██ A concurrence of the Master and Chancellor on an issue properly referred and supported by material evidence is conclusive on appeal not only as to the credibility

of witnesses and the basic evidentiary facts but also as to the reasonable inferences drawn from such facts. Black v. Love, etc. Coal Co., 30 Tenn. App. 377, 206 S. W. (2d) 432.

■ While the decree might be affirmed on the ground of a concurrent finding of facts alone, we think, in view of the fact that Dulworth executed the contract as president of both corporations and there was an interlocking directorate, a court of equity should scrutinize the transaction with care to see that no unfair advantage was obtained by Tennessee over Lake City, its stockholders and creditors. ·

■ While such contracts are not void per se, they are to be subjected to close judicial scrutiny in order to determine the absence or presence of fraud and unfairness and where a transaction between two corporations having common directors or officers is challenged by one of them the burden is upon the other to uphold the transaction by a showing of good faith and fairness. Annotation 33 A. L. R. (2d) 1060.

■ In this case, Tennessee made no effort to carry this burden and all of the evidence in the record shows that the royalty provided by the sub-lease was grossly excessive and unfair. The assignments of error of Tennessee are overruled and the decree, as to it, affirmed.

Another question arises on the appeal of Aldo Franconi. His assignments are that the Chancellor erred in overruling his exceptions to the finding of the Special Master that 10% is a reasonable attorney's fee on two notes set up in his intervening petition—that the amount should have been 15% of the principal and interest on the notes.

One of the notes in question is secured by a first chattel mortgage. The other is secured by a conditional sales contract. Both seem to be well secured. The principal and interest on the two notes total some $15,000 or $16,000.

It is true the answer of Lake City demanded proof as to the amounts due on these notes, but there was no real insistence that they were invalid. Petitioner made formal proof of the amount.

The appeal is based largely on the insistence that three highly reputable attorneys of the Knoxville Bar testified that, in their opinion, the fee should be at least 15% of the amount allowed as principal and interest on the notes and that there is no evidence to the contrary.

■ This testimony, however, was not binding on the Chancellor:

■ These matters are within the domain of legal knowledge, and, therefore, opinion testimony by lawyers of experience and reputation is admissible as expert testimony to assist the court. But the Court, on the theory that judges have first hand experience and knowledge of the subject, is the final arbiter, and is not bound by the opinion of the professional legal experts who testify.

■ The allowance should be an exercise of judicial discretion, founded upon the knowledge of the court making the allowance of the real value of the services performed, and should not be rested upon the testimony of experts as to the general value of professional services. Fielden et al. v. Potter et al., 180 Tenn. 176.

We find no error and the decree will be in all respects affirmed. Costs of appeal will be taxed nine-tenths against the Receiver of Tennessee Lightweight Aggregate Corporation and surety on its appeal bond and one-tenth against Aldo Franconi and surety on his appeal bond.