HELEN CORINNE SCALES TRICE, Executrix of the Will of Joe W. Scales, Deceased, Appellee, v. L. E. HEWGLEY and wife, ELIZABETH HEWGLEY, Appellants.—381 S.W.(2d) 589.

Middle Section. January 14, 1964.

Rehearing Denied February 28, 1964.

Certiorari Denied by Supreme Court September 4, 1964.

260

See also 51 Tenn.App. 452, 369 S.W.(2d) 741.

Gullett, Steele & Sanford, Nashville, W. Howell Forrester, Pulaski, for appellants.

Fyke Farmer, Nashville, for appellee.

CHATTIN, J. This is a consolidated case. The complainant, Helen Corinne Scales Trice, Executrix of the Estate of Joe W. Scales, Deceased, filed five original bills in the Chancery Court of Giles County against the defendants, L. E. Hewgley and wife, seeking a recovery on behalf of the Estate of Joe W. Scales, Deceased, for several obligations allegedly due and unpaid at the date of the death of the Testator on April 13, 1959. The suits were consolidated by decrees dated February 15, 1961, and June 5, 1961.

The obligations involved on this appeal are:

(1) A note dated February 18, 1955, in the amount of $10,936.62.

(2) A note dated October 21, 1955, in the amount of $14,000.00, less credits of $4,000.00;

(3) A note dated October 26, 1955, in the sum of $2,259.74; and

(4) A note dated May 12, 1956, in the sum of $2,500.00, less credits of $1,500.00.

The bills sought a recovery of a reasonable Attorney's fee as provided in each of the notes.

The defendants answered the bills and denied they were indebted to the Estate in any sum and pleaded payment of all the obligations sued upon.

The answer averred the defendants had not received proper credits due them on their indebtedness to Scales from certain transactions between Mr. Scales and Mr. Hewgley; and when proper credits were applied to the indebtedness sued on, it would be seen all of the alleged indebtedness had been satisfied.

The answer further averred the defendants were due a credit of $5,000.00 on the note for $10,936.62, which Hewgley had paid to the Union Bank of Pulaski on May 31, 1955, with instructions the amount be credited to the account of Mr. Scales.

A considerable amount of testimony was taken in which it was shown the defendant, L. E. Hewgley, and the Deceased, Joe W. Scales, had entered into an agreement to pool Hybrid seed corn produced on their respective farms during the year 1955 and deliver it to a seed marketing company for sale. The corn was delivered to the marketing company under contract with Scales. Scales on delivery of the corn was advanced the sum of $3.00 a bushel. After the death of Scales, Hewgley filed a claim against the Estate of Scales seeking to recover his pro rata share of the proceeds received by Scales from the marketing company. The claim was tried in the Circuit Court of Giles County and Hewgley was cast in the suit.

On March 13, 1962, the complainant filed an amended bill by leave of the Chancellor in which she set forth the above facts and alleged Hewgley was estopped to insist he was due a credit on the obligations sued upon in this

case because of the seed marketing contract since his claim in the Circuit Court was disallowed.

The defendants answered the amended bill and averred that on October 21, 1955, Scales purchased the equity of Hewgley in a feed and seed processing mill, together with seed storage bins and warehouses. Scales, in consideration of this conveyance, agreed to convey a small plot of land of the value of $1200.00 to Hewgley and to forgive or to cancel all the indebtedness due Scales by Hewgley at that time.

The complainant moved to strike this answer on the grounds the matters set up in the answer were inconsistent with the defenses urged in the answer to the original bill; and that the answer was filed without leave of the Chancellor.

The Chancellor overruled the motion.

The cause was heard upon depositions and documentary proof.

The Chancellor filed a memorandum opinion in which he found the complainant was entitled to recover of the defendants the principal due on the four promissory notes with interest and an Attorney's fee of ten per cent.

The defendants admit complainant is entitled to recover the balance due on the note dated May 12, 1956, but insist complainant is not entitled to recover an Attorney's fee thereon.

The defendants prayed and were granted an appeal to this Court and have filed five assignments of error.

The complainant has filed three assignments of error.

We will consider the assignments of the defendants first.

In considering these assignments, it is our duty under authority of T.C.A. sec. 27-301 to examine the whole matter of law and fact as disclosed by the record upon appeal; but, under T.C.A. sec. 27-303, there is a prima facie presumption of the correctness of the decree of the Chancellor and we must affirm the decree unless the evidence preponderates against it.

Defendants' first assignment complains of the action of the Chancellor in failing to hold the note for $10,-936.62 was not discharged as a part of the consideration for the transfer of the mill property.

It is undisputed in the record this note was executed by the defendants for the following reasons: The defendants became interested in purchasing a farm in Giles County known as the Sugar Creek farm. The defendants were unable to purchase the farm from the owners. Hewgley solicited the aid of Scales in purchasing the farm. Hewgley agreed to pay Scales a commission of $5,000.00 if he would purchase the farm for him. Scales purchased the farm for $35,000.00 and conveyed it to Mrs. Hewgley for that amount. The defendants obtained a loan from an insurance company and after paying a mortgage assumed by Scales on the farm, they executed a first mortgage on the property to secure this loan. They executed the $10,936.62 note to Scales which covered his commission and the balance of the purchase price of the farm he paid himself and executed a second mortgage on the farm to secure this note.

Honorable David Cheatham, a reputable member of the Giles County Bar, testified both Mr. Hewgley and Mr. Scales came to him and employed him to draft the deed to the mill property. They also requested he witness

the oral agreement with respect to the mill transfer. He testified it was agreed Scales would purchase the equity Hewgley owned in the mill; that in consideration of the transfer Scales agreed to convey to defendants a small tract of land valued at $1200.00 and to forgive all of the debts owed by Hewgley to Scales prior to the date of the deed. It was also agreed Hewgley would have an option to repurchase the property from Scales within five years of the date of the deed. He further testified no definite amount of debts to be forgiven were agreed upon, but the parties estimated Hewgley's indebtedness to Scales was approximately $30,000.00.

Both Scales and Hewgley testified in other litigation prior to the death of Mr. Scales substantially as Mr. Cheatham. Hewgley did not exercise his option to repurchase the mill property.

It is shown in the record that at the time of the execution of the deed to the mill, Scales loaned Hewgley $16,259.74, evidenced by the notes of October 21, 1955, for $14,000.00 and of October 26, 1955, for $2,259.74. The Hewgleys secured these loans by executing a third mortgage on the Sugar Creek farm. The proceeds of these loans were paid to the Union Bank which reduced his indebtedness to the Bank to $40,000.00, and which was secured by a mortgage on the mill property.

The Chancellor gave as his reason for excepting this debt, the $10,936.62 note, from the debts forgiven as a part of the consideration for the mill transaction, the fact that Scales had testified in other litigation prior to his death that he did not put any money of his own in the farm transaction and that when the mill transaction was consummated he took a third mortgage on the farm

to secure the notes of $14,000.00 and $2,259.74, and retained the second mortgage securing the $10,936.62 note.

We cannot follow this reasoning since all the proof in the record shows that defendants executed the $10,936.62 note to Scales and secured it by a second mortgage on their farm. They acknowledged this debt to Scales. They thereby became indebted to Scales for this amount regardless from whence the money came. Nor do we see any significance in the fact Scales did not release the second mortgage securing this debt and took a third mortgage securing the two notes executed on October 21 and 26, 1955, for the reason defendants had an option to repurchase the mill. In the event Hewgley exercised his option the $10,936.62 note would be a part of the consideration, otherwise the note would be released or discharged. As stated, Hewgley did not exercise his option.

The argument of complainant the testimony of Mr. Cheatham, Scales, and Hewgley as to the mill property conveyance violates the parol evidence rule and should have not been considered by the Chancellor is untenable. This agreement was made subsequent to the execution of this note and was based upon a valuable consideration, and did not vary or alter the terms of the note.

As said in the case of Brunson v. Gladish, 174 Tenn. 309, 125 S.W.(2d) 144, the parol evidence rule, "does not prohibit the establishment by parol evidence of an agreement made subsequent to the execution of the writing, although such subsequent agreement may have the effect of adding to, changing, modifying or even altogether abrogating the contract of the parties as evidenced by the writing; for the parol evidence does not in

any way deny that the original agreement of the parties was that which the writing purports to express, but merely goes to show that the parties have exercised their right to change or abrogate the same, or to make a new and independent contract."

■ Accordingly, we think the evidence preponderates against the finding of the Chancellor and this assignment of error should be sustained.

We do not deem it necessary to consider complainant's second assignment of error since we have sustained the first assignment as this assignment insists a payment of $5,000.00 made to Union Bank by the defendants on May 31, 1955, with instructions to the Bank to credit the account of Scales with this amount, should have been credited to the note of February 18, 1955.

Assignments three and four complain of the action of the Chancellor in not holding the notes of October 21, 1955, in the sum of $14,000.00, and October 26, 1955, for $2,259.74, were not forgiven by the mill transaction or satisfied by a proper credit due defendants under the Hybrid seed corn marketing agreement.

It is urged in support of these assignments that although the parties never did identify the indebtedness to be forgiven or state the exact amount to be forgiven all the proof shows both parties agreed the amount to be approximately $30,000.00; and that all the indebtedness sued on in this case including the notes of October 21 and 26, 1955, amount to $27,559.57, and thus these two notes are of necessity included in the forgiveness agreement.

But we cannot agree to this argument. Mr. Hewgley in March, 1958, testified in other litigation, Third National Bank v. Travelers Insurance Company, that Mr.

Scales had loaned him as much as $20,000.00 without a note evidencing the debt and there were debts of three and four thousand dollars which he had loaned him on open account. He testified this $20,000.00 loan was forgiven and discharged as a part of the consideration for the mill transfer as well as some of the smaller debts on open account.

In September, 1958, Mr. Hewgley testified in the case of Dixie Growers v. Scales these two notes were unpaid. He made no claim at that time the indebtedness evidenced by these two notes was a part of the consideration for the transfer of the mill and these notes were to be cancelled or forgiven in the event Hewgley did not exercise the option. He further testified he needed this money to use in some other business.

It is shown in the record that Mr. Scales paid to the Union Bank the sum of these notes, $16,259.74, to satisfy a note of Hewgley to the Bank in the sum of $14,460.00, plus interest thereon. The Bank held certain warehouse receipts on 2300 bushels of corn and 295 tons of other commodities as collateral to this obligation. Thus, Hewgley regained title to the corn and commodities for his own use.

As to the insistence of defendants they were entitled to a credit sufficient to more than cover the balance due on these two notes from the Hybrid seed corn deal in which Hewgley transferred to Scales his corn grown on his farm in 1955, the record shows that Hewgley never made demand on Scales during his life time for a settlement of this matter. Mr. Scales' death occurred on April 13, 1959. In May, 1956, the record shows Hewgley borrowed $2500.00 from Scales and made payments on this

note of $1,000.00 and $500.00 on December 10 and 24, 1956, respectively. It is inconceivable Hewgley would be borrowing money from Scales in 1956 and repaying him if he was due a settlement with Scales because of the Hybrid seed corn transaction. The record also shows Hewgley was unable to convince the Circuit Court of Giles County he was entitled to recover any sum of money from the Estate of Scales due to the corn pool agreement.

■ We think there is material proof in the record to sustain the finding of the Chancellor that complainant was entitled to a judgment on these notes and we overrule these assignments.

The fifth assignment of error complains of the action of the Chancellor in decreeing the complainant was entitled to recover an Attorney's fee of ten per cent on the notes sued upon.

It is argued the notes provide for a reasonable Attorney's fee and there is no proof in the record as to what a reasonable Attorney's fee would be; and, therefore, complainant waived her right to recover the Attorney fees provided for in the notes.

This assignment has given the Court considerable concern. The Chancellor in his discretion allowed complainant a recovery of ten per cent of the principal and interest due on the notes as a reasonable Attorney's fee.

The notes provide for a reasonable Attorney's fee in the event the notes were placed in the hands of an Attorney for collection. The complainant offered no proof as to what a reasonable fee would be. Nor do we find any agreement between the parties the Chancellor could fix the amount of the fee without evidence. In a similar

situation this Court, in the case of Nu-Way Ice Cream Machine Company, Inc. v. Pig'n Whistle, 16 Tenn.App. 581, 65 S.W.(2d) 575, held the complainant had waived its right to recover an Attorney's fee provided in the note; and reversed the Chancellor who had allowed a recovery of ten per cent of the balance due on the note in his discretion as as reasonable fee. This holding has been cited and approved by this Court in the case of Natl. Union Fire Insurance Company v. Baker, et al., 21 Tenn. App. 60, 105 S.W.(2d) 114.

We are unable to agree to the soundness of this rule. Although opinion testimony of experienced and reputable Attorneys is admissible in such matters to aid the Court, we do not think the Court is bound to require the testimony of experts in such matters when, as in this case, the Court has first hand knowledge of the services of the Attorney from the record in the cause and the pleadings are such as to justify the Court in making an allowance for reasonable fees.

We think, when the question is the reasonableness of an allowance of fees to Counsel, expert opinion testimony is advisory only. And, as stated in the case of Carmack v. Fidelity-Bankers Trust Company, 180 Tenn. 571, 177 S.W.(2d) 351: "It is the reserved discretionary prerogative of the Court itself to fix the fees of solicitors in causes pending, or which have been determined by the Court.

\*    \*    \*    \*    \*    \*

"These matters are within the domain of legal knowledge, and, therefore, opinion testimony by lawyers of experience and reputation is admissible as expert testimony to assist the Court. But the Court, on the theory

that judges have first hand experience and knowledge of the subject, is the final arbiter, and is not bound by the opinion of the professional legal experts who testify.

" 'The allowance * * * should be an exercise of judicial discretion, founded upon the knowledge of the court making the allowance of the real value of the services performed, and should not be rested upon the testimony of experts as to the general value of professional services.' Hitchcock v. American Pipe & Const. Co.. 90 N.J.Eq. 576, 107 A. 267, 269''

In the case of Harriman Welding Company v. Lake City Light. A. Corp., 46 Tenn. App. 529, 330 S.W.(2d) 564, this Court, in an opinion by Honorable Luke McAmis, Presiding Judge, followed the foregoing principles in sustaining the decree of the Chancellor in allowing a fee of ten per cent as reasonable in a suit upon two promissory notes when all the expert testimony was to the effect a fee of fifteen per cent would be reasonable.

We are mindful of the fact the foregoing case can be distinguished from the case of Nu-Way Ice Cream Machine Company, Inc. v. Pig'n Whistle, supra, on the theory there was expert opinion testimony on the question of reasonable Attorney fees in that case; and, therefore, there was no waiver.

■ A waiver, however, is an intentional relinquishment of a known right. Complainant sought in her bills a recovery of reasonable Attorney's fees but through inadvertence and oversight failed to offer evidence on the matter. We do not think under these facts there was a waiver. As stated in Masson v. Anderson, 62 Tenn. 304, "abandonment or waiver of a right important to parties cannot be made out by uncertain implication, but ought

clearly to appear. To constitute such a waiver of a benefit, there must be a clear, unequivocal, and decisive act of the party, an act which shows a determination not to have the benefit intended.''

■ The record in the case is voluminous, consisting of four volumes of testimony and one volume of exhibits. It was necessary for the Chancellor to read the same in order to reach his conclusions. He had first hand knowledge of the services rendered by the Attorney for complainant. Accordingly, we think he had sufficient evidence before him to evaluate those services. From our examination of the record we are satisfied the fee of ten per cent of the recovery allowed by the Chancellor was reasonable and that we would not be justified in reversing him or remanding the case for further proof.

For the foregoing reasons we overrule the assignment.

■ Complainant's first assignment of error complains of the action of the Chancellor in failing to strike the answer of the defendant to the amended bill.

We see no merit in this assignment. The defense pleaded by the answer was that of payment which was the same as that pleaded in the answer to the original bill. We see no inconsistency in the answers to the original and amended bills. This being true, it was not necessary for defendant to obtain leave of the Chancellor to file the answer.

Complainant's second asssignment of error complains of the action of the Chancellor in finding that both Scales and Hewgley were responsible for the Hybrid seed corn becoming contaminated or mixed.

The Chancellor gave this finding as his reason for

disallowing any credit to Hewgley on the notes sued upon due to the corn transaction.

This assignment has as its basis the fact that after the corn was placed with the marketing association, Dixie Growers, Inc., it was allegedly found the corn had been mixed or was not varietally pure Dixie 33 corn as represented by Scales. The marketing association filed suit against Scales alleging he had misrepresented the purity of the corn. The case is now before this Court on appeal

We have hereinabove given our reasons for sustaining the Chancellor in disallowing any credit to defendants on the indebtedness sued upon in this case from the seed corn agreement and it is unnecessary for us to consider this assignment. Whether Scales, Hewgley, or both, were responsible for the impurity of the corn becomes immaterial.

The third assignment of complainant complains of the action of the Chancellor in admitting the evidence of Mr. David Cheatham relative to the mill conveyance. It is insisted he was the Attorney for Mr. Scales in the matter; and, therefore, his testimony was incompetent or objectionable as being a privileged communication.

Mr. Cheatham testified both Mr. Scales and Mr. Hewgley were present when he was requested to witness the oral agreement between them relative to the consideration for the transfer of the mill property. Consequently, he was not acting in a confidential relation with Scales. Where third parties are present during conversations between an Attorney and client, such conversations are not privileged and the Attorney may testify as to

such conversations. Sims v. Bank of Commerce & Trust Company, 14 Tenn.App. 672.

We overrule this assignment.

■ Finally, complainant argues in her brief that the statute of limitation of six years and the statute preventing suits to be brought against a personal representative after nine months from the date of the first notice to creditors, forbids the defendants from relying upon the evidence the discharge or release of the three notes were part of the consideration for the transfer of the mill property.

There is no merit in this argument. Defendants did not seek a judgment against the complainant in this case, but sought merely to show the notes had been released and discharged. In other words, the defendants sought to show the claims were discharged and released at the time complainant filed the bills. The statutes of limitation do not prevent a defendant from showing the payment of a claim sued upon.

■ Before concluding this opinion, it is necessary we consider one other matter. After the case was argued at the Bar of this Court on September 17, 1963, a "Rebuttal Brief" and a "Supplemental Memorandum" were filed on behalf of complainant on November 15, and 18, 1963, respectively. Defendants have filed a motion to strike the briefs on the grounds the rules of this Court do not contemplate the filing of briefs after argument without permission of the Court and permission to file same was not sought nor granted by this Court or a member thereof. We think the motion is good and should be sustained. We know of no precedent for such procedure nor are we cited to any by Counsel.

We think there is a more compelling reason for striking the "Rebuttal Brief" from this record. On page 10 of the "Rebuttal Brief," Mr. Farmer, the Attorney for complainant, makes impertinent, derogatory and defamatory remarks impugning the character of Mr. Howell Forrester, one of the Attorneys for the defendants, and Mr. D. R. Wade, Jr., a partner of Mr. Forrester.

██ These remarks refer to Mr. Wade as the "right-hand" member of the firm and Mr. Forrester as the "left-hand" member; and compare the "scruples" of Mr. Forrester to those of Mr. Wardlaw Steele, one of the Attorneys representing the defendants in this Court, by stating the professional scruples of Mr. Steele "are of an entirely different order" than those of Mr. Forrester.

"A brief in no case can be used as a vehicle for the conveyance of hatred, contempt, insult, disrespect or professional discourtesy of any nature for the court of review, trial judge, or opposing counsel; invectives are not argument, and have no place in legal discussion, but tend only to produce prejudice and discord." 5 C.J.S. Appeal and Error sec. 1327, page 346; Ward v. Univ. of South, 209 Tenn. 412, 354 S.W.(2d) 246.

We admonish Counsel of his duty to observe self-restraint and decorum. We trust he will heed this warning in the future.

The motion is sustained and the briefs will be ordered stricken from the record. The costs incident to the filing of the briefs will be adjudged against complainant.

The decree of the Chancellor will be modified to the extent indicated in this opinion and affirmed in all other respects. A decree will be entered in this Court granting complainant a recovery on the balance due on the notes

dated May 12, 1956, and October 21, 1955, with interest plus an Attorney fee of ten per cent, and on the principal of the note dated October 26, 1955, with interest plus an Attorney fee of ten per cent.

The costs are adjudged equally between the parties.

Shriver and Humphreys, JJ., concur.

## On Petition to Rehear.

Complainant, Helen Corinne Scales Trice, Executrix, has filed a petition to rehear in which she argues we, in our opinion, "overlooked the controlling evidence that there was no agreement reached between the defendant, Lewis E. Hewgley, and Joe W. Scales at the time of the execution of the conveyance to the mill and the third deed of trust on October 21, 1955, that the $10,936.62 note formed any part of the consideration for the mill conveyance."

Although, complainant insisted in the trial court and in her brief and argument in this Court that Mr. Cheatham acted as the Attorney for Mr. Scales during the negotiations for the transfer of the mill property and any statements made to him relative to the transaction by Scales were privileged, she now insists the testimony of Mr. Cheatham to the effect Scales agreed to reconvey the mill to Hewgley at any time he would reimburse him for his capital investment in the property as competent. She argues this testimony, when considered with the further testimony of Mr. Cheatham that at no time during the negotiations between Scales and Hewgley did Hewgley claim any payment or credit on the $10,936.62 note, shows no agreement was reached between the parties this note was to be cancelled in any event.

It is then argued, although there was testimony of an oral agreement the note would be cancelled as part of the consideration for the transfer of the mill in the event Hewgley failed to exercise his option to repurchase, such testimony of such an agreement was prior to or contemporaneous with the conveyance of the mill and the third deed of trust on the Sugar Creek farm executed on the same day securing the $14,000.00 note, "and any other indebtedness we may now or hereafter owe said Joe W. Scales," and would contradict the quoted provision of the third deed of trust and is incompetent.

Thus, complainant insists there is no competent evidence in the record of any discharge or forgiveness of the $10,936.62 note.

The fact Hewgley made no claim of payment or credit on the note to Mr. Cheatham is no proof an agreement was not reached the note would be cancelled as part of the consideration of the mill transaction. Nor is the testimony of Mr. Cheatham to the effect Scales agreed to reconvey the property to Hewgley upon Hewgley reimbursing him for capital improvements to the property conclusive no such agreement was reached. This testimony lifted from the testimony of Mr. Cheatham and out of context does not show that he also testified Mr. Scales agreed to cancel the indebtedness of Hewgley to him existing prior to the mill transaction as part of the consideration therefor.

We deem it unnecessary to reiterate our reasons for finding the preponderance of the evidence in the case sustained the insistence of the defendants the note would be cancelled as part of the consideration for the mill transfer in the event Hewgley failed to exercise his option to repurchase.

We are unable to agree this evidence contradicts or varies the terms of the third deed of trust because the proof shows the note would not be cancelled or forgiven unless Hewgley failed to exercise his option to repurchase. The indebtedness remained binding upon defendants during the option period and in the event Hewgley exercised his right to repurchase the property.

It results the petition to rehear is denied with costs.

Shriver and Humphreys, JJ., concur.