IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 1, 2001

## STATE OF TENNESSEE v. MICHAEL E. PATE

**Appeal from the Circuit Court for Dickson County**
**No. CR5291 Allen Wallace, Judge**

---

### No. M2001-00076-COA-R7-CV - Filed October 16, 2002

---

This case originated in the Juvenile Court of Dickson County, Tennessee and was appealed to the circuit court pursuant to Tennessee Code Annotated section 37-1-159(a). Michael Pate appeals the action of the circuit court adopting the juvenile court action with slight modifications. We affirm the action of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J. and PATRICIA J. COTTRELL, J., joined.

John P. Cauley, Franklin, Tennessee, for the appellant, Michael E. Pate.

Paul G. Summers, Attorney General & Reporter; and Kim R. Helper, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee.

### MEMORANDUM OPINION[1]

On October 11, 2000, Defendant, Michael Pate, signed a waiver of his right to remain silent with right to appointed counsel if he was unable to afford an attorney and right to a jury trial, together with other constitutional and statutory rights. In this document, he waived all of the conventional constitutional rights listed above and entered a plea of guilty before Judge A. Andrew Jackson, Juvenile Judge of Dickson County. The plea of guilty was to the charge of driving without a driver's license and in violation of a valid court order. Based upon this plea of guilty he was found delinquent in an order providing:

---

[1]Court of Appeals Rule 10:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion, it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

Denied representation by attorney. Any driving privileges revoked until 19th birthday. Placed on indefinite county and adult probation. Patsy Vaughn as county probation officer. Three hundred hours public service work. State to be notified of court's order. Placed on curfew. Pay $50.00 fines and costs on each. Out of court review set for 11-28-2000.

This 11th day of October 2000. Signed A. Andrew Jackson, Juvenile Court Judge.

On October 19, 2000, Michael Pate, represented by Attorney Timothy B. Potter of Dickson, Tennessee, filed his notice of appeal to the Circuit Court of Dickson County, which notice provides: "Comes now the defendant, MICHAEL PATE, and does hereby give notice of his appeal to the Circuit Court for Dickson County, Tennessee from the judgment of the Dickson County Juvenile Court entered on Wednesday, October 11, 2000."

On October 17, 2000, Circuit Judge Allen W. Wallace entered an order in the Circuit Court of Dickson County providing:

Upon the motion of Appellee MICHAEL PATE from a judgment in the Dickson County Juvenile Court on Wednesday, October 11, 2000, to stay the judgment of the Dickson County Juvenile Court pending a hearing on appeal by this Court, the Court finds that the motion is well taken and should be granted, as to curfew. The curfew will stay in effect except for extracurricular school activities.

It is therefore ordered, adjudged and decreed that all orders of the Dickson County Juvenile Court entered on October 11, 2000, are hereby stayed pending a hearing on appeal in this court; said notice of appeal having been filed.

Entered this 17th day of October 2000.

On November 30, 2000, the case came on to be heard in the circuit court on appeal from the juvenile court order of October 11, 2000, with Attorney Timothy Potter representing Michael Pate. The following from the transcript of the hearing is pertinent:

MR. POTTER: ----- all afternoon, does that every day of the week; and he didn't have a way to get back and forth from work or school. His father works. His mother works in Nashville, so what he did was he went up to the driver's license testing center and he lied to them; and he told them that his driver's license had been lost; and he submitted an application; and they gave him a new driver's license.

Well, some time after that, somehow Juvenile court or someone at Juvenile court got the word that Mr. Pate was driving on a driver's license that had been ordered revoked; and he was running for senior class president of his class up here

at Dickson county; and he has this pickup truck that he's got; and he put in the back window of the pickup truck a sign that said "Vote for Michael Pate."

He was coming off the hill at the high school and Officer David Cole, who directs traffic down there, noticed the sign; and pulled him over; and asked him for a driver's license; and he gave him this new driver's license; and I think Officer Cole called it in and realized that Judge Jackson had ordered it to be suspended.

Well, he was cited for contempt, driving on a suspended license, I suppose or revoked license. He went back to Juvenile court on a contempt violation; and Judge Jackson on that day, that was October the 11th, Judge Jackson then extended the revocation of his license until his 19th birthday. Gave him three hundred hours of public service work to do; and ordered that he have a six o'clock curfew, in addition to paying court costs and maybe a fine. I think there was a fine.

Well, at that time Mr. Pate came to me; and I filed the notice of appeal to Your Honor; and Your Honor signed an order on the 17th of October staying the curfew because he is - - he was elected president of his high school senior class incidently - -

THE COURT: Staying only at school activities.

MR. POTTER: Yes, sir.

THE COURT: Otherwise he was on curfew.

MR. POTTER: Yes, sir. You signed an order lifting the curfew with regards to the extracurricular school activities.

As you know, probably the high school class president has a lot of responsibilities to his class during homecoming week and football season, and there is one week incidently over there where they spend all evening long working on a float until eleven to twelve o'clock at night; and he was able to do that when Your Honor lifted the order; and that's appreciated.

The reason we are here is because - - not because we are contesting guilt or innocence; but the reason we are here - - I heard Your Honor say this morning in a juvenile case that the primary intent of Juvenile court obviously is - - it's not to punish.

It does punish, and there is an intent to punish; but the primary intent is to try and make these young people responsible adults; and turn them into responsible adults.

And I would say that the reason we are here is we're contesting - - we are contesting the sentence of the Juvenile court and asking for a couple of things. Mr. Menke has indicated the State opposes this.

But we are asking that he be granted a restricted driver's license - - narrowly restricted; but will allow him to drive to high school or to school.

He will be in college when he is nineteen. You're allowing him to get back and forth to school; and also allow him to go to work. This job at Tenso is an important job to him; and he has been walking. He will testify to, if we have to, from the high school over to Tenso in the afternoons, which is quite a walk. It is over at

the Dickson City Lake; and he has also walked recently from Charlotte where he meets his county probation officer to work in Dickson.

I think there is an incentive or should be an incentive on the part of the Courts to make sure that these young people do well in school, which he's doing. He is president of his senior class, which is quite an honor at Dickson County. There are about five hundred kids in his class - - president of the class - - to do well in school; and also to hold jobs; and do something responsible in the community.

He is doing a good job over at Tenso. He has been working there for two years, and he is well thought of over there. He can't get back and forth. It's posing a burden on him.

Now he didn't do right. He lied and he shouldn't have done what he did; and I've asked him - - I said, Michael, why did you do that? That's a clear violation of what Judge Jackson ordered you to do; and he said, well, Tim, I had to get back and forth. He realizes it was wrong.

Ms. Vaughn is his county probation officer, she will testify if you heard from her today that he has since being in court on that contempt charge completed over a hundred sixty hours of public service out of the three hundred hours that Judge Jackson ordered him to do. He is completing the public service work. He is reporting to his county probation officer. He is going to school. He is holding down a job several hours a week; and I would ask the Court - - I don't care and his family doesn't care if you wanted to even modify the order and maybe - - if you wanted to give him more probation or give him a fine; but what the justice I think would require that he be given - - we're not asking that his driver's license be reinstated.

. . . .

He is half way through his high school year; and he is president of the senior class; and he does have things he has got to be at in the evenings.

And I think if Your Honor put a reasonable restriction in there - - now any other punishment that the State wants to offer - -

THE COURT: Well, here's the situation. You want me to change Judge Jackson's order. Mr. Menke doesn't want to set any kind of precedence over there to get people to come over here to get the Judge to change the order; and I don't blame Mr. Menke. I'd be taking the same position.

You're talking about two judges saying something different. Unfortunately it's in my lap now and I think from what you've told me; and I don't think Mr. Menke would disagree with possible truth that you said you were going to offer about the young man.

But let's talk about punishment. That's kind of fits the situation, you know, most people we have in this court here that punishment would probably be all right. Would be more than just losing the license; but here's a young man that works, goes to school, most people we have in this court here, a lot of them his age and a little bit older, they wouldn't work in a pie factory if they were starving to death.

I'd like to help the young man. I think he ought to have a way to get to and from work. Now he ought not be up in the shopping center. He's already got a

speeding ticket. Every policeman in town is going to be watching him. That's just the facts of life, young man. I can't help it. You might as well put you a big red light on your car; and let it just spin around when you go through town. That's just the way it is; and I can't do anything about it. Nobody can.

But you let another sixteen or seventeen year old boy drive through town, they'll never see him. They'll see you driving through town, just like they saw your name in your car. You might as well just have a big siren on your car, say here I'm coming, you all stop me because it's going to happen.

. . . .

MR. POTTER: Your Honor, again I'm going to say, we're not opposed to the Court restructuring the punishment - restructuring the punishment maybe doing something in addition to what the Juvenile court has done; but what we're asking for is for - - when the young man has got classes, he's got school and he's gotten a job. When we've got young people that come into this court all the time and adults who come into this court all the time who are not even an ounce as responsible. They don't work. They are a menace on society; and he works.

He works. He does well in school. All that I'm asking is that he be allowed to get back and forth to school and allowed to fulfill the responsibilities he took to his classmates.

Now, yeah, he filled out a false application. He told them that he did that. He should not have done that. I think he needs (phonetic) contrite for it. He will tell the court that he did it in order to get back and forth. He didn't do it in order to just drive any where he wants.

He'll also testify that when he did it, he used that license to get back and forth to school and work. That's about all he does.

So I'm asking the Court to do that. Anything else the State is not proposing, any modification of the punishment thing the Juvenile Court imposed; but we've got to remember, too, I think that this sprung from a speeding ticket violation; and now it's snowballed on the young man; and then because - -

THE COURT: Well, it snowballed because of him.

MR. POTTER: Right. It snowballed because he didn't do what the Judge told him to do.

THE COURT: If it had just been a speeding ticket, he'd probably been all right.

MR. POTTER: But if you'll remember the speeding ticket resulted in a loss of license with no restricted license for a year.

THE COURT: For how long?

MR. POTTER: For a year.

THE COURT: How old is he now?

MR. POTTER: He's eighteen. He turned eighteen not long ago.

GENERAL MENKE: I don't believe the court order says he can't get a restricted license. It may, but I don't remember reading it.

MR. POTTER: It did, Your Honor. He could not get a restricted license. Now he could have gotten an attorney and petitioned the Court within ninety days, in Juvenile Court to have it returned; and he would have - - probably would have had it returned had he done everything he was supposed to do.

But he didn't have a restricted driver's license then; and that's why he felt the need to go and get this license and tell this lie to the department.

But again, Your Honor, I think the punishment has got to fit the crime. I think he will lose his job. You'll hear some testimony about that because he can't continue to walk.

He also has to get to Charlotte to his probation meetings. His parents simply can't take him; and we give restrictive driver's license to people - -

THE COURT: Well, we're going to give him a restricted license, to come to Charlotte to see his probation officer, go to school and go to work.

MR. POTTER: Well, I don't know about that. But I'm asking for school and work. Those are the two things I'm asking for.

THE COURT: Maybe like - -

MR. POTTER: But there's one thing after another. I mean in addition to walking to school and work, he is also going to the probation officer; and that's a lot of getting around; and then getting home at night and doing your work.

. . . .

Even set it for another review. I don't know. Bring it back here or do something with it or send it back to Juvenile Court; but he's got three hundred hours of public service work to do, walking to school, walking to work, if he can get there or hitching a ride with somebody, if he can find one; and trying to fulfill his responsibilities at school and at home, so Your Honor, I would ask you to modify the sentence.

THE COURT: Let me think about it. I don't see why you all don't go back to the Juvenile Judge, himself, and get at least a restricted license.

MR. POTTER: Judge Jackson is understandably angry, Your Honor.

THE COURT: I don't blame him.

MR. POTTER: I doubt that he would do that; and I didn't represent him in Juvenile Court, but that's why we exercised our right of appeal and came here.

THE COURT: Well, let me think about it. I'll give you all something - -

Following this proceeding, on December 1, 2000, Judge Wallace entered the following order:

This matter came before the Honorable Allen W. Wallace, Circuit Judge, on November 30, 2000, pursuant to the Notice of Appeal taken by the juvenile from the order of the Juvenile Court made on October 11, 2000. The Court took the matter under advisement and now makes its ruling. The appeal is of the sentence only imposed by the Juvenile Court. The Court finds that the offense in this case was serious, showing the minor using his intellectual ability or with the help of someone else, practicing a fraud upon the court. Granted, the defendant has many mitigating

factors in his favor, but the enhancement factors in this case are so great and go directly to the integrity of the justice system. This was a well-planned and intentional fraud upon the Court, and a penalty necessary for deterrence must be applied. The Court finds that the sentence imposed by Judge Jackson should be the judgment of this court with the modification of curfew as indicated.

Accordingly, it hereby is ORDERED AND ADJUDGED that

1. The juvenile's driving privileges are suspended until his 19th birthday;

2. The juvenile shall be placed on indefinite County and Adult probation under the Juvenile Court, and as directed by the juvenile court, his county probation officer will be Patsy Vaughn;

3. The juvenile will complete 300 hours of public service work, and he will receive credit for service work performed since October 11, 2000;

4. The State of Tennessee, Department of Safety is to be notified of the Court's order;

5. The juvenile is placed on curfew as part of his probation, but that curfew shall be modified so as to allow the juvenile to attend high school related functions and activities;

6. The juvenile will have a $50.00 fine and pay the fine and costs imposed in Juvenile Court and is taxed with the costs of this cause in the Circuit Court, and he will receive credit for any costs and fines already paid.

7. This case is remanded back to the Juvenile Court for all further proceedings deemed necessary to the enforcement of this order and the Juvenile Court probation requirements.

Made, this 1st day of December, 2000.

On December 22, 2000, now represented by Attorney John P. Cauley of Franklin, Tennessee, Michael E. Pate filed his notice of appeal to this Court.

Appellant's first issue on appeal is "did the Circuit Court of Dickson County fail to observe even minimal due process standards during Mr. Pate's appeal from the Juvenile Court?"

Appellant asserts that he was not accorded a trial *de novo* in the Circuit court under Tennessee Code Annotated section 37-1-159(a).

The record from the Juvenile court indicates that before entering his plea of guilty on October 11, 2000, Appellant was informed by the juvenile judge of all of his constitutional rights including the appointment of counsel and acknowledged that he understood those rights. He then entered his plea of guilty which was accepted by the Juvenile court. Thereafter, he obtained counsel and appealed to the Circuit court pursuant to Tennessee Code Annotated section 37-1-159(a). He was then and there vested with the right to a trial *de novo* upon all issues including the issue of guilt. He chose, however, through his attorney in open court, not to challenge the finding of guilt by the Juvenile court but only sought to modify the sentence imposed by the juvenile judge. If ever there

was an open court waiver of the right to a *de novo* trial on the issue of guilt, it is evidenced by the affirmative statements made to Judge Wallace by Mr. Potter in his capacity as attorney for Appellant at the hearing of November 30, 2000. All nonjurisdictional and procedural defects and even constitutional infirmities are subject to waiver by Defendant if the record shows such waiver. *Patterson v. State*, 684 S.W.2d 110, 111 (Tenn. Crim. App. 1984). It is worthy of note that Appellant, at the time of the November 30, 2000 hearing, was an adult and not a minor. Appellant, having waived his rights to *de novo* trial in the circuit court on the issue of guilt or innocence, is limited in the circuit court to the issue of his juvenile court sentence. The December 1, 2000 order granted him some relief, (modification of curfew), but otherwise simply adopted the same sentence provided by the juvenile court.

The remaining issues sought to be raised in this Court do not complain about the sentence imposed by the circuit court but rather attack the underpinnings of the juvenile court judgments. None of these matters were addressed to the circuit court on the appeal from the juvenile court action but are raised for the first time on appeal to the court of appeals.

As a general matter, appellate courts will decline to consider issues raised for the first time on appeal that were not raised and considered in the trial court." *Heatherly v. Merrimac Mutual Fire Ins. Co., et al.*, 43 S.W.3d 911, 916 (Tenn. Ct. App. 2000) citing *Reid v. State*, 9 S.W.3d 788, 796 (Tenn. Ct. App. 1999). In spite of this rule we would observe that the juvenile court had continued jurisdiction over Mr. Pate pursuant to Tennessee Code Annotated section 37-1-103(c) at the time of the December 1, 2000 order remanding the case back to the juvenile court under the modified sentence.

One other matter commands the attention of this Court. In the appellate brief filed by Attorney John P. Cauley of Franklin, Tennessee, certain impertinent and improper statements are made. Says Mr. Cauley: "It also bears mention that the language of the circuit court order affirming the judgment of the juvenile court indicates complete ignorance of the purpose of the juvenile code." Further says Mr. Cauley in reference to the juvenile judge in Dickson County "here, the juvenile court sends business to its friends in the local recycling industry with the added advantage of lining the pockets of the court well beyond the permitted $50.00 fine." This portion of the Appellant's argument is stricken pursuant to Rule 9 of the Tennessee Rules of the Court of Appeals.

Such remarks indicate that counsel is either ignorant of or in disregard of his duty to observe self-restraint and decorum. As this Court has said:

> A brief in no case can be used as a vehicle for the conveyance of hatred, contempt, insult, disrespect or professional discourtesy of any nature for the court of review, trial judge, or opposing counsel; invectives are not argument, and have no place in legal discussion, but tend only to produce prejudice and discord." 5 C.J.S. Appeal and Error § 1327, page 346; *Ward v. Univ. of South*, 209 Tenn. 412, 354 S.W.2d 246.

We admonish Counsel of his duty to observe self-restraint and decorum.  We
trust he will heed this warning in the future.

*Trice v. Hewgley*, 53 Tenn. App. 259, 276, 381 S.W.2d 589, 597 (1964).

The judgment of the trial court is in all respects affirmed and the case is remanded to the trial
court for such other proceedings as may be necessary or proper.

Costs are assessed against Appellant.

_____
WILLIAM B. CAIN, JUDGE