IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 2000 Session

**MELANIE DIANNE (DAVIS) PHILLIPS v. THOMAS HICKMAN PHILLIPS**

**Direct Appeal from the Circuit Court for Davidson County**
**No. 98D-2174     Muriel Robinson, Judge**

**No. M1999-00212-COA-R3-CV - Filed July 27, 2000**

This appeal arises from a dispute between Plaintiff Melanie Dianne (Davis) Phillips ("Wife") and Defendant Thomas Hickman Phillips ("Husband") regarding the terms of their divorce.  The trial court (1) granted a divorce to Wife, (2) divided the parties' marital property, (3) awarded rehabilitative alimony to Wife, (4) awarded attorney's fees to Wife, and (5) denied a motion for costs filed by Husband.  For the reasons set forth below, we modify the court's division of the parties' marital property.  In all other respects, however, we affirm the ruling of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY K. LILLARD, J., joined.

Rebecca E. Byrd, Franklin, Tennessee, for the appellant, Thomas Hickman Phillips.

Lawrence D. Wilson, Nashville, Tennessee, for the appellee, Melanie Dianne (Davis) Phillips.

**OPINION**

The parties married in April of 1981.  They are the parents of two children, namely Kate, born March 4, 1984, and Sam, born February 1, 1988.  The parties separated in May of 1998, after seventeen years of marriage.  Wife filed a complaint for divorce in July of 1998 alleging that Husband was guilty of inappropriate marital conduct and that irreconcilable differences had arisen between the parties.  Husband filed an answer to Wife's complaint and a counter-complaint for divorce in August of 1998 admitting that irreconcilable differences had arisen between the parties, denying that he was guilty of inappropriate marital conduct and alleging that Wife was guilty of inappropriate marital conduct.  In Wife's September 1998 answer to Husband's counter-complaint, she denied that she was guilty of inappropriate marital conduct.  In April of 1999, Wife amended her complaint to allege as additional grounds for divorce that Husband had committed adultery.  In May of 1999, Husband filed an answer to Wife's amended complaint admitting Wife's allegation of adultery.  On June 14, 1999, the trial court entered an order which, consistent with the written

stipulations of the parties, granted an absolute divorce to Wife on the grounds of inappropriate marital conduct and adultery, awarded custody of the parties' minor children to Wife, and granted specific visitation to Husband. This order further provided that Husband shall pay child support to Wife in the amount of $1,255.00 per month, that Husband shall pay rehabilitative alimony to Wife in the amount of $600.00 per month, that Husband's alimony obligation shall continue through December of 2000, and that Husband shall pay Wife's attorney's fees in the amount of $4,000.00. Finally, in its June 14, 1999 order, the court divided the parties' marital property and allocated the parties' marital debt as follows:

## Marital Property Awarded to Husband

| Item of Property | Value Stated by Husband | Value Stated by Wife | Value Found by Trial Court |
|---|---|---|---|
| Personal Property, Household Goods, and Furnishings in Husband's Possession | $2,015.00 | $2,143.00 | N/A |
| Bruno Stock | $0.64 | $0.64 | $0.64 |
| Husband's Personal Bank Account | $264.00 | $264.00 | $264.00 |
| Old Hickory Credit Union Bank Account | $291.09 | $291.09 | $291.09 |
| ½ of Tax Refund | $2,400.00 | $2,400.00 | $2,400.00 |
| 1992 Toyota SR5 4-Runner | $9,100.00 | $9,100.00 | $9,100.00 |
| Husband's Retirement Accounts | $124,329.69 | $124,329.69 | $124,329.69 |

## Marital Debt Allocated to Husband

| Debt | Amount of Debt |
|---|---|
| First USA Waldenbooks Visa | $6,000.00 |
| First Union MasterCard | $3,000.00 |
| Discover Card | $4,528.00 |

**Value of Marital Property Awarded to Husband:** $138,464.42
**Amount of Marital Debt Allocated to Husband:** 13,528.00

**Net Amount of Marital Estate Awarded to Husband:** $124,936.42[1]

### Marital Property Awarded to Wife

| Item of Property | Value Stated by Husband | Value Stated by Wife | Value Found by Trial Court |
|---|---|---|---|
| Farm (153 Acres) | $282,500.00 | $282,500.00 | $282,500.00 |
| Personal Property, Household Goods, and Furnishings in Wife's Possession | $25,507.00 | $12,857.00 | N/A |
| Livestock (2 horses) | $2,000.00 | $2,000.00 | $2,000.00 |
| Indian Lake Membership | $500.00 | $500.00 | $500.00 |
| Wife's Personal Bank Accounts | $163.12 | $163.12 | $163.12 |
| ½ of Tax Refund | $2,400.00 | $2,400.00 | $2,400.00 |
| 1991 Ford Aerostar Van | $2,700.00 | $2,700.00 | $2,700.00 |
| Proceeds From Sallie Mae Student Loan | $7,240.35 | $7,240.35 | $7,240.35 |

[1] There is a dispute between the parties regarding the value of their personal property, household goods, and furnishings. According to Husband, the value of this property in his possession is $2,015.00 and the value of this property in Wife's possession is $25,507.00. Wife contends, however, that the value of the personal property, household goods, and furnishings in Husband's possession is $2,143.00 while the value of this property in her possession is $12,857.00. The trial court did not make any finding regarding the value of the parties' personal property, household goods, and furnishings. Because this Court did not observe the witnesses and their demeanor while testifying, we are not in a position to evaluate the credibility of the witnesses and determine which of the values stated by the parties are correct. Therefore, when calculating the net marital estate awarded to each of the parties, we have assumed that the value of the parties' personal property, household goods, and furnishing is equal to an average of the amounts stated by the parties. We note, however, that the difference between the figures suggested by Husband and Wife is not significant enough to alter the conclusions reached by this Court on appeal as to what constitutes an equitable distribution.

| | | | |
|---|---|---|---|
| Wife's Retirement Accounts | $251,314.62 | $251,314.62 | $251,314.62 |

### Marital Debt Allocated to Wife

| Debt | Amount of Debt |
|---|---|
| Bank of Dickson Loan (Farm Indebtedness) | $27,505.02 |
| Green Point Credit | $54,508.51 |
| Sallie Mae Student Loans | $26,642.83 |
| Vanderbilt Nursing Loans | $1,265.68 |

**Value of Marital Property Awarded to Wife:**      **$568,000.09**
**Amount of Marital Debt Allocated to Wife:**      <u>109,922.04</u>

**Net Amount of Marital Estate Awarded to Wife:**      **$458,078.05**

Husband subsequently filed a motion seeking an award of costs pursuant to Rule 68 of the Tennessee Rules of Civil Procedure, which was denied by the trial court. This appeal by Husband followed.

The issues raised by Husband on appeal, as we perceive them, are as follows:

I.      Did the trial court err in its division of the parties' marital property?
II.      Did the trial court err in awarding rehabilitative alimony to Wife?
III.      Did the trial court err in awarding attorney's fees to Wife?
IV.      Did the trial court err in denying Husband's motion for costs pursuant to Rule 68?
V.      Is Husband entitled to an award of attorney's fees on appeal?

To the extent that these issues involve questions of fact, our review of the trial court's ruling is ***de novo*** with a presumption of correctness and thus we may not reverse the court's factual findings unless they are contrary to the preponderance of the evidence. ***See, e.g., Randolph v. Randolph***, 937 S.W.2d 815, 819 (Tenn. 1996); T.R.A.P. 13(d). With respect to the court's legal conclusions, however, our review is ***de novo*** with no presumption of correctness. ***See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.***, 986 S.W.2d 550, 554 (Tenn. 1999); T.R.A.P. 13(d).

### *Division of Marital Property*

When dividing marital property upon divorce, the trial court must consider all relevant factors, including those set forth in section 36-4-121 of the Tennessee Code Annotated.[2] *See* Tenn. Code Ann. § 36-4-121(c) (1996). These factors are as follows:

> (1) The duration of the marriage;
>
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
>
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
>
> (4) The relative ability of each party for future acquisitions of capital assets and income;
>
> (5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
>
> (6) The value of the separate property of each party;
>
> (7) The estate of each party at the time of the marriage;
>
> (8) The economic circumstances of each party at the time the division of property is to become effective;
>
> (9) The tax consequences to each party; and
>
> (10) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (1996). Although the trial court's distribution of the parties' marital property must be equitable, the court is not required to divide the parties' marital property equally. *See Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997); *Bookout v. Bookout*, 954 S.W.2d 730, 732 (Tenn. Ct. App. 1997). The equity or inequity of a court's distribution of marital property is determined by examining the final result of the court's ruling rather than the division of any particular piece or category of marital property. *See Watters*, 959 S.W.2d at 591; *Bookout*, 954 S.W.2d at 732; *Wade v. Wade*, 897 S.W.2d 702, 717 (Tenn. Ct. App. 1994); *Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990). Additionally, we note that trial courts are afforded a great deal of discretion when dividing marital property. *See Fisher*, 648 S.W.2d at 246; *Bookout*, 954 S.W.2d at 732; *Wade*, 897 S.W.2d at 715; *Koch v. Koch*, 874 S.W.2d 571, 579 (Tenn. Ct. App. 1993); *Loyd v. Loyd*, 860 S.W.2d 409, 411 (Tenn. Ct. App. 1993). Consistent with this general principle, the distribution of marital property made by the trial court in the instant case is entitled to a presumption of correctness and may not be reversed unless it is contrary to the preponderance of the evidence. *See, e.g.,*

---

[2]This statute specifically provides, however, that the relative fault of the parties is not among the factors that the court may consider when making an equitable division of the parties' marital property. *See* Tenn. Code Ann. § 36-4-121(a)(1) (1996). *See also Fisher v. Fisher*, 648 S.W.2d 244, 246-47 (Tenn. 1983); *Wilder v. Wilder*, 863 S.W.2d 707, 715 (Tenn. Ct. App. 1992).

*Dellinger v. Dellinger*, 958 S.W.2d 778, 780 (Tenn. Ct. App. 1997)(citing *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn. Ct. App. 1993)); T.R.A.P. 13(d).

The parties were married for more than seventeen years. At the time of trial, both of the parties were forty-five years of age. Although both of the parties were in good physical and mental health and did not suffer from any disabilities at the time of trial, Husband had experienced some heart trouble during the marriage. Both of the parties are well educated and capable of earning a living. Husband has an associate of arts degree, a bachelor of arts degree, a master of divinity degree, and three years of postgraduate resident training. He earns a gross salary of $5,520.00 per month as the Chief of Chaplains for the Murfreesboro and Nashville Veterans Administration Medical Center. Wife has a bachelor of arts degree in biology, a bachelor of science degree in allied health, twenty-nine hours of credit towards a master of divinity degree, and is expected to complete the requirements of a master of science degree in nursing in August of 2000. During the parties' marriage, Wife was employed as a surgeon's assistant, as a Mary Kay representative, and as a part-time interim director of children at the parties' church. She also stayed at home during part of the parties' marriage in order to raise their two children. At the time of trial, Wife, in addition to being a full time student, worked five to six days per month as a substitute teacher and earned an average of between $200.00 and $250.00 per month. In terms of the financial needs of the parties, Husband submitted a statement indicating that his expenses are $3,685.00 per month and Wife testified that she incurs expenses in the amount of $3,725.00 per month. Both Husband and Wife significantly contributed to each other's education, training, and increased earning power. Wife supported husband with respect to his career goals and was the major breadwinner during the early years of the parties' marriage when Husband was completing his education. Likewise, Husband financially supported Wife in her career endeavors and when she decided to go back to school and obtain a master of science degree in nursing. Given their levels of education and employment histories, we think that both Husband and Wife have the ability to earn income and acquire capital assets in the future. Both of the parties contributed to the acquisition of their marital property as wage earners. Additionally, Wife contributed to the acquisition of the parties' marital property as a homemaker during the period of time that she was a stay at home mother to the parties' two children. Although there is no dispute regarding which of the parties' items qualify as separate property, the parties do disagree regarding the values of these items. According to Husband, the value of his separate property is $3,100.00 and the value of Wife's separate property is $5,495.00. Wife contends, however, that the value of Husband's separate property is $1,460.00 while the value of her separate property is $2,515.00. On the date of the parties' marriage, Husband's property consisted of a 1978 Subaru compact car, a king size bed, a walnut wardrobe, an oak table, a maple rocker, and some china and crystal while Wife owned a fully furnished home, a 1979 Beetle convertible, and other various items of personal property. With respect to the economic circumstances of the parties at the time of their divorce, Husband testified that he has taken cash advances in order to pay his attorney's fees and has had to place many of his expenses on credit cards. Similarly, Wife testified that she has had to change her lifestyle since her separation from Husband and has had to borrow $8,500.00 from her father in order to pay her expenses and attorney's fees.

As stated above, the trial court awarded Husband marital property having a net value of $124,936.42 while awarding Wife marital property having a net value of $458,078.05. Thus, Wife was awarded marital property having a net value of more than three and one-half times the net value of the marital property awarded to Husband. After considering the factors set forth in section 36-4-121(c) that are applicable to the case at bar, we agree with Husband that the court's division of the parties' marital property is inequitable. It was stipulated prior to trial that Wife would receive the title to and retain possession of the family farm, which is the parties' most valuable asset. At trial, however, Husband sought compensation for his equity in the farm through an award of part of Wife's retirement accounts. The value of Wife's retirement accounts at the time of trial was $251,314.62. We conclude that $75,000.00 from Wife's retirement accounts should be awarded to Husband in order to effectuate an equitable division of the parties' marital property. We therefore modify the trial court's ruling to reflect that, in addition to the marital property that the court awarded Husband, Husband is also awarded a total of $75,000.00 from Wife's retirement accounts. On remand, the court should enter a qualified domestic relations order assigning this amount to Husband.

### *Rehabilitative Alimony*

As stated above, the trial court ordered that Husband is obligated to pay rehabilitative alimony to Wife in the amount of $600.00 per month until December of 2000. Husband argues on appeal that, given Wife's education, employment history, and current income opportunities, an award of alimony is inappropriate in the case at bar.

Trial courts have broad discretion to determine whether alimony is appropriate and, if so, the nature, amount, and duration of the alimony awarded. *See Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998)(citing *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996); *Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn. Ct. App. 1989)). There are no hard and fast rules to be applied in cases involving a request for alimony. *See id.* (citing *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996); *Stone v. Stone*, 409 S.W.2d 388, 392-93 (Tenn. Ct. App. 1966)). Rather, decisions regarding alimony hinge on the unique facts of the case and involve the careful consideration and balancing of many factors, including those set forth in section 36-5-101(d)(1) of the Tennessee Code Annotated. *See id.* at 683 (citing *Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994); *Loyd*, 860 S.W.2d at 412). These factors are as follows:

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (C) The duration of the marriage;
> (D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1999). The most important factors that a court must consider when determining whether to award alimony are (1) the need of the spouse seeking support and (2) the ability of the other spouse to pay support. *See Young v. Young*, 971 S.W.2d 386, 391 (Tenn. Ct. App. 1997); *Watters*, 959 S.W.2d at 593; *Smith v. Smith*, 912 S.W.2d 155, 159 (Tenn. Ct. App. 1995).

Husband is the Chief of Chaplains at the Murfreesboro and Nashville Veterans Administration Medical Center and earns a gross salary of $5,520.00 per month. Wife works five to six days per month as a substitute teacher and earns an average of between $200.00 and $250.00 per month. The trial court allocated the parties' marital debt in such a way that Husband has debt totaling $13,528.00 and Wife has debt totaling $109,922.04. In terms of the financial needs of the parties, Husband submitted a statement indicating that his expenses are $3,685.00 per month and Wife testified that she incurs expenses in the amount of $3,725.00 per month. Wife was awarded the family farm and, if necessary, could obtain additional income by renting out a portion of this property, renting out a vacant house that is on the property, or selling timber that is on the property. Husband has an associate of arts degree, a bachelor of arts degree, a master of divinity degree, and three years of postgraduate resident training. Wife has a bachelor of arts degree in biology, a bachelor of science degree in allied health, twenty-nine hours of credit towards a master of divinity degree, and is expected to complete the requirements of a master of science degree in nursing in August of 2000. The parties were married for more than seventeen years. At the time of trial, both Husband and Wife were forty-five years of age and did not have any physical or mental disabilities. There is no evidence that it would be undesirable for Wife to work outside of the home because she is the custodian of the parties' two minor children. Rather, Wife testified that she expects to complete her education in August of 2000 and take the nurse practitioner board exam that fall, which

will qualify her to obtain employment as an acute care nurse practitioner. The parties disagree regarding the value of their separate property. According to Husband, the value of his separate property is $3,100.00 and the value of Wife's separate property is $5,495.00. Wife contends, however, that the value of Husband's separate property is $1,460.00 while the value of her separate property is $2,515.00. The trial court awarded Husband marital property having a net value of $124,936.42 and awarded Wife marital property having a net value of $458,078.05. In the previous section of this opinion, however, we modified the court's ruling so that Husband's portion of the parties' marital property is increased by $75,000.00 and Wife's portion of this property is decreased by $75,000.00. The parties enjoyed a comfortable standard of living during their marriage. Wife testified that "we were pretty much living to the extent of our means" and indicated that, since the parties' separation, she has had to alter her lifestyle, make some cut-backs, and borrow money from her father in order to pay her bills. Both Husband and Wife have contributed as wage earners, and Wife has contributed as a homemaker, to the marriage and to the other party's education, training, and increased earning power. Finally, it is undisputed that Husband had an extramarital affair with one of his co-workers during the parties' marriage and thus is guilty of inappropriate marital conduct and adultery.

After consideration of the factors discussed above, we disagree with Husband's contention that an award of alimony is inappropriate in the case at bar. Given Wife's current income and status as a full-time student, we think that she is in need of spousal support. Husband earns a gross salary of $5,520.00 per month and thus is capable of providing this support. Although the need of Wife and ability of Husband to pay are our primary considerations, we are also mindful of the court's finding of marital fault on the part of Husband. In Tennessee, there is a statutory preference for temporary, rehabilitative alimony when an economically disadvantaged spouse is in need of support. *See* Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1999). The purpose of rehabilitative alimony is to enable an economically disadvantaged spouse to become more self-sufficient by acquiring additional job skills, education, or training. *See Anderton*, 988 S.W.2d at 682 (citing *Smith*, 912 S.W.2d at 160; *Cranford v. Cranford*, 772 S.W.2d 48, 51 (Tenn. Ct. App. 1989)). In an attempt to make herself more self-sufficient, Wife went back to school and has been working toward a master of science degree in nursing. Wife testified that she will complete the requirements for this degree in August of 2000 and should be able to obtain employment as an acute nurse practitioner and be able to support herself by December of 2000. Under these circumstances, and based on all of the evidence presented in the case at bar, we do not think that the trial court erred in granting rehabilitative alimony to Wife or in the amount or duration of the alimony award. We therefore affirm the court's ruling with respect to this matter.

### *Attorney's Fees*

In the context of divorce, an award of attorney fees is, in essence, an award of alimony. *See Sannella v. Sannella*, 993 S.W.2d 73, 77 (Tenn. Ct. App. 1999); *Smith*, 912 S.W.2d at 161; *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995); *Gilliam v. Gilliam*, 776 S.W.2d

81, 86 (Tenn. Ct. App. 1988); ***Duncan v. Duncan***, 652 S.W.2d 913, 915 (Tenn. Ct. App. 1983); ***Ligon v. Ligon***, 556 S.W.2d 763, 768 (Tenn. Ct. App. 1977). In determining whether to award attorney's fees in a divorce case, the trial court is required to consider the same factors used when considering a spouse's request for alimony. *See **Houghland v. Houghland***, 844 S.W.2d 619, 623 (Tenn. App. 1992); Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1998). The question of whether to award attorney fees in such cases, and the amount thereof, are largely left within the discretion of the trial court and will not be disturbed on appeal unless the trial court's ruling is contrary to the preponderance of the evidence. *See **Houghland***, 844 S.W.2d at 623 (citing ***Batson v. Batson***, 769 S.W.2d 849, 862 (Tenn. App. 1988); ***Lyon v. Lyon***, 765 S.W.2d 759, 762-63 (Tenn. Ct. App. 1988)).

Wife sought attorney's fees in the amount of $6,500.00. When questioned by the trial court regarding a bill for his services, counsel for Wife indicated that he would submit an affidavit listing his services and the fees corresponding to these services. No such affidavit is included in the record on appeal. At the conclusion of the trial, the court granted attorney's fees to Wife in the amount of $4,000.00. Husband argues on appeal that the trial court abused its discretion in awarding attorney's fees to Wife because (1) Wife's attorney did not file an affidavit of his fees, (2) no proof was heard regarding the services provided by Wife's attorney or the value of these services, and (3) Wife did not testify regarding her request for attorney's fees.

In ***Kahn v. Kahn***, 756 S.W.2d 685 (Tenn. 1988), the trial court ordered Mr. Kahn to pay Mrs. Kahn $5,000.00 for the attorney's fees that she incurred in connection with the parties' divorce. *See id.* at 686. This Court vacated the award of attorney's fees, in part because of the absence of proof regarding the services rendered by Mrs. Kahn's attorney. *See id.* at 686, 696. The Tennessee Supreme Court reversed, stating as follows:

> ***Connors*** does not say that a fully developed record of the nature of the services rendered is a prerequisite to an award of an attorney's fee in a divorce case. The parties in that case settled all property issues except the amount of wife's fee to be paid by husband which they expressly reserved for litigation. In those circumstances, and for that reason, there was a fully developed record in ***Conners***. However, there is nothing in the opinion by this Court, expressly or by implication, mandating proof on that issue to support and award made by a trial judge.
>
> In ***Wilson Management v. Star Distributors***, 745 S.W.2d 870 (Tenn.1988), we said:
>
> > Again, we agree with ***Trice*** [***v. Hewgley***, 53 Tenn.App. 259, 381 S.W.2d 589 (1964)] that a trial judge may fix the fees of lawyers in causes pending or which have been determined by the court, with or without expert testimony of lawyers and with or without a prima facie showing by plaintiffs of what a reasonable fee would be. Obviously, the burden of proof on the question of what is a reasonable fee in any case is upon the plaintiff and plaintiff should be in a position to

> tender such proof. However, if a trial judge is prepared to fix a reasonable fee based upon the appropriate guidelines without first hearing plaintiff's proof, defendant must be accorded full opportunity to cross examine plaintiff's witness and present evidence on that issue.

*Id*. at 873.

The above quote from ***Wilson Management*** involving a contract provision calling for a reasonable attorney's fee is applicable to a divorce case.

No proof was presented with respect to the value of the services rendered wife in the instant case. During oral argument in the trial court, when wife's lawyer urged the court to award a reasonable attorney's fee the judge asked him to name an amount and his response was $20,000. During husband's lawyer's argument, which followed, no mention was made of the fee issue. At no time in the trial court, nor in this Court, has husband insisted that wife adduce proof on this issue.

Obviously, the trial judge felt that the ***pendente lite*** proceedings which had been heard by him, the pre-trial briefs, depositions and the three day trial had sufficiently acquainted him with the factors we delineated in ***Connors*** to make a proper award of an attorney's fee without proof or opinions of other lawyers. When the trial judge did so, it was incumbent upon husband's lawyer to request a hearing if dissatisfied with the award, or convince the appellate courts that he was denied the opportunity to do so through no fault of his own.

*Kahn*, 756 S.W.2d at 696-97.

In light of the ruling of our supreme court in *Kahn*, we conclude that the trial court did not abuse its discretion in awarding attorney's fees to Wife. At the conclusion of the trial in the instant case, counsel for Wife stated to the court that he would prepare an affidavit of his fees and submit it to the court on a later date. Just moments after counsel for Wife made this statement, the trial court granted Wife an award of attorney's fees. At the time of this ruling, counsel for Husband was on notice that no proof had been presented by Wife regarding her attorney's fees. Yet, counsel for Husband did not object to or question the award. Likewise, when counsel for Husband received a copy of the parties' final decree of divorce, she did not seek to have the decree amended on the grounds that counsel for Wife had failed to submit an affidavit of his fees. Having heard the proof presented and the argument made by the attorneys at trial and having entertained the various pleadings filed in the cause, we think that the trial court was in a position to determine the nature and value of the services rendered by Wife's attorney. Furthermore, after reviewing the entire record on appeal, we conclude that $4,000.00 is a reasonable, if not conservative, estimate of Wife's attorney's fees. Consequently, the trial court's ruling with respect to Wife's request for attorney's fees is affirmed.

### Husband's Rule 68 Motion

Prior to trial, Husband made an offer of judgment to Wife, but she did not accept this offer. On June 11, 1999, Husband filed a motion seeking to recover his costs from Wife pursuant to Rule 68 of the Tennessee Rules of Civil Procedure. Rule 68 provides as follows:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property, or to the effect specified in the offer, with costs then accrued. Likewise a party prosecuting a claim may serve upon the adverse party an offer to allow judgment to be taken against that adverse party for the money or property or to the effect specified in the offer with costs then accrued. If within 10 days after service of the offer the adverse party serves written notice that the offer is accepted, either party may file the offer and notice of acceptance, together with proof of service thereof, with the court and thereupon judgment shall be rendered accordingly. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. ***If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree shall pay all costs accruing after the making of the offer.*** The fact that an offer is made but not accepted does not preclude a subsequent offer.

T.R.C.P. 68 (emphasis added). The trial court subsequently denied Husband's motion for costs.

Husband argues on appeal that, pursuant to Rule 68, the court was required to award him costs because the terms of his offer of judgment were more favorable to Wife than the terms of the judgment ultimately obtained by Wife. There are some significant differences between the terms of Husband's offer of judgment and the final decree of divorce entered by the trial court. First, the offer of judgment purports to grant the parties a stipulated divorce while the final decree grants an absolute divorce solely to Wife on the grounds of inappropriate marital conduct and adultery. Additionally, the visitation rights granted to Husband in the offer of judgment are somewhat different from those in the final decree. The offer of judgment also purports to award slightly less child support to Wife than does the final decree. Finally, the offer of judgment provides that each of the parties shall pay their own attorney's fees while the final decree grants an award of attorney's fees to Wife in the amount of $4,000.00. Given these differences, we do not agree that the terms of Husband's offer of judgment were more favorable to Wife than were the terms of the parties' final decree of divorce. We therefore affirm the trial court's denial of Husband's motion for costs pursuant to Rule 68.

### Attorney's Fees on Appeal

Finally, Husband requests that he be granted attorney's fees on appeal. This appeal has been resolved partially in favor of Husband and partially in favor of Wife. An award of attorney's fees on appeal is inappropriate when both parties to the appeal are partially successful. ***See Storey v. Storey***, 835 S.W.2d 593, 598 (Tenn. Ct. App. 1992)(citing ***Baggett v. Baggett***, 512 S.W.2d 292, 294

(Tenn. Ct. App.1973)). Additionally, as discussed above, Wife is currently a full-time student and Wife's income is substantially smaller than Husband's income. In our discretion, we conclude that Wife should not be required to pay any or all of Husband's attorney's fees. Thus, Husband's request for attorney's fees on appeal is denied.

### *Conclusion*

Based on the foregoing, the trial court's division of the parties' marital property is modified to reflect that, in addition to the property awarded to Husband by the trial court, Husband is also awarded $75,000.00 from Wife's retirement accounts. On remand, the court is instructed to enter a qualified domestic relations consistent with this modification. In all other respects, however, the ruling of the court is affirmed. The costs of this appeal are assessed one-half to Thomas Hickman Phillips and one-half to Melanie Dianne Phillips, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE